Jeremy **BUSCHMANN**, Respondent,

v.

**DIRECTOR OF REVENUE**, Appellant.

No. 72785.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 19, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, John F. Brink, Asst. Atty. Gen., St. Louis, for appellant.

Sanford Miller, St. Louis, for respondent.

KAROHL, Judge.

The Director of Revenue (Director) appeals the circuit court's order reinstating the driving privileges of Jeremy Buschmann (Driver) after a trial de novo pursuant to the procedures outlined in sections 302.500–302.541, RSMo. We reverse and remand.

On December 15, 1996, Officer George Unterreiner of the Overland Police Department responded to a call for a careless and imprudent driver. When he arrived at the location, he saw Driver leaning up against his car which was parked catty-cornered. Unterreiner approached Driver and asked him what he was doing. Driver spoke in slurred speech and said he was trying to get home from an office party in Chesterfield. Driver told him he had several beers at the party. Driver admitted driving to the location. Unterreiner observed that Driver's eyes were bloodshot and watery and smelled a strong odor of intoxicants on his breath. Driver had a difficult time maintaining his balance and he stumbled. Driver refused to take any field sobriety tests, stating he was unable to perform them because he was too drunk. At this time, Unterreiner placed Driver under arrest for driving while intoxicated in violation of the Overland City ordinance.

Unterreiner took Driver to the City of Charlack police department for a breathalyzer test, because Overland's system was down. Unterreiner read Driver his implied consent warning and his rights and Driver agreed to take the test. He observed Driver for fifteen minutes and verified that Driver did not smoke or consume anything or vomit. Unterreiner then watched Officer Feissle of the Charlack police department give Driver the breathalyzer test. Feissle then completed the Alcohol Influence Report, certifying he did not deviate from the procedures of the Department of Health, the BAC Verifier was working properly and he was authorized to operate the breathalyzer. He further cited his permit number and indicated his permit expired on June 6, 1997. The report indicated Driver's blood alcohol content was .282 percent.

Director suspended Driver's driving privileges pursuant to section 302.505 and this suspension was upheld after an administrative hearing. Driver then filed a petition in the circuit court for a trial de novo.

At the trial on May 20, 1997, the Director offered the testimony of Unterreiner and three exhibits. Exhibit B was a copy of the Department of Revenue records which Director offered as a business record. Attached to Exhibit B was a notarized affidavit of the custodian of records of the Department of Revenue–DWI Division attesting the records were business records pursuant to section 492.692, RSMo. Exhibit C was busi-

ness records of the Charlack police department containing the maintenance report of the BAC Verifier, certificate of analysis for the simulator solution and a copy of the Type II permit for the officer who conducted the maintenance check. An affidavit from the custodian of records from the Charlack police department was attached to that exhibit. Exhibit C was admitted. Exhibit B was admitted except for the breathalyzer results and the checklist. The court stated those items lacked foundation for admission because neither a copy of Officer Feissle's Type II permit nor its expiration date had been offered.

Driver offered no evidence to contradict the testimony or information contained in the exhibits. The court then entered judgment setting aside the suspension and reinstating Driver's license. The court found the arresting officer did have probable cause to arrest Driver for driving while intoxicated, but found the evidence in Exhibit B to be insufficient to establish that Officer Feissle had a valid permit to operate a BAC Verifier on December 15, 1996. Director appeals from this judgment.

In the point on appeal, Director contends the trial court erred in determining there was insufficient evidence to support the suspension of Driver's license. We agree.

To suspend a license under section 302.505, the Director must show by a preponderance of the evidence that the police had probable cause to arrest the driver for driving while intoxicated and the driver's blood alcohol content exceeded the legal limit at the time of his arrest. *Peeler v. Director of Revenue*, 934 S.W.2d 329, 331 (Mo.App. E.D. 1996). There was no dispute that Unterreiner had probable cause to arrest Driver. Indeed, the court found such probable cause.

The evidence at trial also showed that Driver's blood alcohol content exceeded the legal limit. To lay a proper foundation for blood alcohol tests Director must show: (1) the test was performed by following the approved techniques and methods of the Department of Health; (2) the operator had a valid permit; and (3) the equipment and devices were approved by the Department.

*Poage v. Director of Revenue*, 948 S.W.2d 194, 196 (Mo.App. E.D.1997).

Here, the court erroneously found the blood alcohol test results were not admissible because Director failed in the burden of proving the breathalyzer operator had a valid permit. The Director does not need to produce a copy of the officer's Type II permit as evidence to establish his or her qualifications. *Smith v. Director of Revenue*, 948 S.W.2d 219, 221 (Mo.App. E.D.1997); *Narsh v. Director of Revenue*, 878 S.W.2d 82, 84 (Mo. App. E.D.1994). It is sufficient if the officer certifies on the Alcohol Influence Report checklist that he or she is authorized to operate the breathalyzer in use and he or she possesses a valid permit by citing the permit number and expiration date. *Smith*, 948 S.W.2d at 221.

In the case at hand, Feissle did certify on the report that he was authorized to operate the BAC Verifier used to analyze Driver's blood alcohol content. He indicated that he had a valid Type II permit and cited his permit number and the expiration date. No other evidence is necessary to establish that Feissle had the necessary qualifications to operate the breathalyzer. *Id.* Further, this evidence was properly offered as a business record with the attached notarized affidavits. *See*, section 302.312, RSMo Cum.Supp.1997, and sections 490.680 & 490.692, RSMo 1994.

Exhibits B & C also established the other foundational requirements for admission of the blood alcohol test results. Therefore, the results were properly in evidence and established Driver had a blood alcohol content of .282 percent, which is far above the legal limit of .10 percent. Therefore, the trial court's decision is against the weight of the evidence and should be reversed.

We reverse and remand the cause for the trial court to enter a judgment sustaining the Director's suspension of Driver's driving privileges.

AHRENS, P.J., and CRANDALL, J., concur.