Thomas William **ANDERSON,**
**Plaintiff/Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Defendant/Appellant.**

No. 72622.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 16, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., Keith D. Halcomb, Asst. Atty. Gen., Jefferson City, for defendant/appellant.

Frank M. Hankin, Michael J. Smith, Clayton, for plaintiff/respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Director of Revenue (Director) appeals from the judgment of the trial court reinstating the driving privileges of Thomas William Anderson (Anderson). The Director alleges the trial court erred when it: (1) determined that Anderson's breath test results were inadmissible and, (2) required the Director to prove that the breath machine was properly maintained by an authorized permit holder before the results could be admitted. We reverse and remand.

On December 13, 1996 at or about 1:21 a.m., Officer Chad T. Deakin observed a 1984 GMC Yukon traveling on Telegraph Road in St. Louis County cross the dotted white line several times. Officer Deakin stopped the vehicle. The driver identified himself as Anderson. Officer Deakin reported that he noticed a strong odor of alcohol coming from Anderson and that Anderson's eyes were watery and glassy. Anderson was having problems keeping his balance and used his vehicle for support. Officer Deakin administered the Standardized Field Sobriety Test, including the walk and turn test, the one leg stand test, the gaze nystagmus test, and the Rhomberg internal clock test. Officer Deakin determined that Anderson failed the tests and arrested him for driving while intoxicated. Officer Deakin's alcohol influence report recorded that Anderson had answered that he had consumed five to six beers between 10:00

p.m. and 12:30 a.m. The report also showed Anderson weighed 180 pounds.

Officer Deakin's report further indicated that Anderson was taken to the St. Louis County Intake in Clayton, Missouri. Anderson was advised of his Miranda Rights [1] and the provision of the Missouri Implied Consent Law. Anderson indicated that he understood these rights and agreed to take a chemical breath test. Officer Deakin observed Anderson for the required 15 minutes before administering the test, during which Anderson did not smoke, vomit or put anything in his mouth. Officer Douglas Karcher administered the test. He has a valid Type III permit, number 631336 with an expiration date of August 26, 1998. Officer Karcher completed the Blood Alcohol Test Report by certifying that he was authorized to operate the DataMaster instrument, indicating his permit number, and stating that there was no deviation from any of the procedures approved by the Department of Health. The DataMaster Maintenance Report indicated that the machine used for testing Anderson's blood alcohol content was last inspected on November 20, 1996, 23 days before Anderson's breath test. According to the Maintenance Report, the maintenance was performed by Michael Johnson, a Type II permit holder, permit number 620107.

The Blood Alcohol Test Report indicated that Anderson's blood alcohol content was .16 percent. The Director suspended Anderson's driving privileges pursuant to Section 302.505, RSMo 1994.[2] The suspension was upheld after an administrative hearing. Anderson filed a petition for a trial de novo in the circuit court. Anderson's suspension case was submitted to the trial court on the record alone. Director's documents submitted to the court consisted of the following: (1) arresting officer's Alcohol Influence Report; (2) arresting officer's narrative on Anderson's December 13, 1996 arrest and the record of arrest; (3) citations for operating a motor vehicle in an intoxicated condition and for failing to drive within a single lane; (4) Blood Alcohol Test Report and print-out showing Anderson's Blood Alcohol Content

to be .16 percent; (5) DataMaster Maintenance Report dated November 20, 1996; (6) a copy of Michael Johnson's Type II permit which recorded his permit number as 620109; and (7) affidavits of the records custodians of the Missouri Department of Revenue and the St. Louis County Intake Center. The records also contained various notices sent to Anderson in conjunction with the license suspension and administrative hearing.

Anderson objected in Petitioner's Objections and Memorandum to the admission of the Maintenance Report because Michael Johnson's permit number on the Type II permit, 620109, and the number recorded on the Maintenance Report by Michael Johnson, 620107, were inconsistent. The trial court agreed and found that "[t]he evidence [was] insufficient to prove that the breathalyser used to test [Anderson] was maintained by an authorized Type II permit holder. The permit [number] listed on the maintenance report [did] not match the number on the copy of the Type II permit submitted."

We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the court erroneously declares or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.1976).

On appeal, Director contends that the trial court erred in setting aside Anderson's suspension because the evidence did show that Anderson was operating a motor vehicle while intoxicated. Director further contends that the trial court erred when it required the Director to prove that the breath test machines had been properly maintained by an authorized permit holder. Because the issues raised by these points are interrelated, we will discuss them together.

At trial, Director has the burden of establishing a *prima facie* case for suspension of a driver's license by presenting evidence that at the time of arrest (1) there was probable cause for arresting the driver for driving under the influence, and (2) that the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. All statutory references are to RSMo 1994, unless otherwise indicated.

alcohol concentration in the driver's blood was .10 percent or greater. Section 302.505; Section 302.530; *Green v. Director of Revenue*, 961 S.W.2d 936 (Mo.App. E.D.1998) (citing *Whitworth v. Director of Revenue*, 953 S.W.2d 142, 143 (Mo.App. E.D.1997)). The Director must establish three elements to allow admission of the blood alcohol test results: "1) the test was performed by following approved techniques and methods of the Division of Health, 2) the operator held a valid permit, and 3) the equipment and devices were approved by the Division." *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–41 (Mo.1992). Regulations adopted in 1988 also require an inspection of the breath test machine by a Type II permit holder within 35 days of the blood alcohol test for admittance of the test results. 19 CSR 25–30.031(3).

■ Once the Director has established a *prima facie* case, the burden shifts to the driver to present evidence to rebut the state's *prima facie* case by a preponderance of the evidence. *Id.* at 938 (citing *Andersen v. Director of Revenue*, 944 S.W.2d 222, 223–24 (Mo.App. W.D.1997)). The submission of a case on records alone poses a risk of the inability to explain discrepancies. *Smith v. Director of Revenue*, 948 S.W.2d 219, 222 (Mo.App. E.D.1997). Therefore, caution should be exercised when a driver's license suspension is submitted on the records alone. *Cannon v. Director of Revenue*, 895 S.W.2d 302, 306 (Mo.App. E.D.1995).

■ The burden is high to rebut the Director's *prima facie* case. In *Green*, the Director made a *prima facie* case by presenting evidence of probable cause for arrest and the blood alcohol content test results. *Green* at 938. The test results indicated that the driver's blood alcohol content was .104 percent. *Id.* at 937. The driver tried to rebut this evidence by offering expert testimony by a professor of pharmacology that the driver's blood alcohol content at the time of testing and at the time of driving could be different. *Id.* at 938. The court held that the testimony was insufficient to rebut the presumption created by the test results because the driver failed to present evidence that the driver's blood alcohol content was *less* than .10 percent. *Id.* at 939.

■ Here, the Director had the burden to show that Officer Deakin had probable cause to arrest Anderson for driving while intoxicated and that at the time of the arrest, Anderson's blood alcohol content was .10 percent or greater. As to the first element, the uncontradicted evidence established that Officer Deakin had probable cause to believe Anderson had been driving while intoxicated. Officer Deakin saw Anderson's vehicle cross the white line several times, saw Anderson use his vehicle for support, detected a strong odor of alcohol, and saw Anderson fail field sobriety tests. As to the second element, the evidence established that Anderson's blood alcohol content exceeded .10 percent. The first three requirements to allow admission of the breath test results are not in controversy here. There is documentation that the test was performed following approved techniques. Officer Karcher had a valid permit to operate the machine. And, the DataMaster instrument is approved by the Department of Health.

Anderson argued, and the trial court found, that the Director failed to meet the requirement of a maintenance check of the breath test machine within 35 days because the permit number on the maintenance form was inconsistent with the permit number recorded on the Type II permit that was submitted by the Director. The Director argues that a *prima facie* case was made with regard to the 35–day maintenance check by looking only at the Maintenance Report and therefore, the court does not need to look at the permit for consistency.

The parties have failed to cite and we have not found any cases that discuss the requirements to admit the 35–day maintenance check. In order to rebut the Director's *prima facie* case, Anderson must establish by a preponderance of the evidence that the DataMaster machine was not maintained according to the "operational procedures established by the Department of Health." 19 CSR 25–30.011(2)(F). The trial court found that there was not enough evidence to prove that the machine had been maintained properly. We disagree.

We find *Bradford v. Director of Revenue,* 735 S.W.2d 208 (Mo.App. E.D.1987) instructive. In *Bradford,* the incorrect date was printed on the breathalyzer print-out. *Id.* The court found that the wrong date was insufficient to invalidate the test results. *Id.* The court stated that "[t]he incorrect date on the print-out does not evince a malfunction of the machine." *Id.* at 210. Similarly, we find that an incorrect permit number does not invalidate a maintenance check unless the driver can show by a preponderance of the evidence that the machine was not inspected by a Type II permit holder at least 35 days prior to the breath test.

 Director made a *prima facie* case by presenting the Maintenance Record showing that the machine had been checked within 35 days. We find that Anderson failed to present *evidence* to rebut the *prima facie* case of the Director. Anderson argues that the incorrect Type II permit number indicates that the DataMaster machine was not properly maintained. He argues that there could be another Michael Johnson, or that someone else holds the valid Type II permit. Here, the driver must rebut with *evidence* that there are two Michael Johnsons not merely point out an inconsistency. We find that Anderson presented only hypotheticals and presented no real evidence that Michael Johnson was not a valid Type II permit holder.

Case law and the Regulations indicate what kind of evidence is needed to support a valid maintenance inspection. The Code of State Regulations indicates that Type II permit holders retain copies of their maintenance inspections. 19 CSR 25–30.031(3). In *Miller v. Director of Revenue,* 719 S.W.2d 787, 790 (Mo.1986), it was found that the actual permit was not needed to prove the permit holder's qualifications and the permit holder's unrebutted testimony alone established the qualifications to administer the maintenance. In order to rebut the *prima facie* case, the driver would need to bring forth evidence that this type of documentation or this type of proof was lacking and show that the machine had not been inspected.

While Anderson argues that a machine cannot be reliable if maintained by operators without valid permits, Anderson offers no proof that the machine was not properly inspected within 35 days of the breath test. Therefore, we conclude that the Director met all the requirements to admit the results of the breath test.

The judgment of the trial court is reversed and the cause remanded for the trial court to enter a judgment reinstating Anderson's suspension.

SIMON and HOFF, JJ., concur.