Brian Edward ENDSLEY, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.

No. WD 56653.

Missouri Court of Appeals, Western District.

Sept. 21, 1999.

As Modified Nov. 2, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 1999.

Application to Transfer Denied Dec. 21, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Farrell D. Hockemeier, Richmond, for respondent.

Before: EDWIN H. SMITH, P.J., and HANNA and SPINDEN, JJ.

EDWIN H. SMITH, Presiding Judge.

The Director of Revenue (the Director) appeals from the judgment of the circuit court reinstating the driver's license of the respondent, Brian E. Endsley, after it had been administratively suspended for driving while intoxicated (DWI) pursuant to § 302.505.[1]

In his sole point on appeal, the Director claims that the trial court erred in reinstating the respondent's driver's license because he carried his burden of proof to support the administrative suspension of his license under § 302.505 in that there was sufficient evidence to establish, as required by the statute for suspension, that there was probable cause to arrest the respondent for DWI and that, at the time, his blood alcohol concentration (BAC) was ten-hundredths of one percent or more by weight of alcohol in his blood.

We affirm.

## Facts

On February 13, 1998, Officer Michael Bridgeforth, a police officer for the City of Richmond, Missouri, observed the respondent driving fifty miles per hour in a thirty-five mile per hour zone. He pursued the respondent's vehicle, following it into a parking lot where it stopped, at which time he exited his patrol car and approached the vehicle to issue a speeding citation.

While issuing the citation, the officer smelled alcohol on the respondent's breath. The respondent admitted that he had drunk two beers. As a result, Officer Bridgeforth administered three field sobri-

ety tests which, in his opinion, the respondent failed. He also administered a portable breath test, which showed that the respondent had a BAC, which was consistent with a charge of DWI. Based on the various test results, the officer arrested the respondent for DWI and transported him to the Richmond police station. At the station, he was given a breath test, which indicated that he had a BAC of .108 of one percent.

Following his arrest, the Director notified the respondent that his driver's license was suspended pursuant to § 302.505. The respondent filed a petition for administrative review of the suspension, on which a hearing was held on July 16, 1998. After hearing evidence, the hearing officer determined that there was sufficient evidence to establish that the respondent had been arrested upon probable cause to believe he was driving a motor vehicle while intoxicated and that his BAC was in excess of ten-hundredths of one percent. As such, the suspension of the respondent's driver's license was sustained.

On August 10, 1998, the respondent filed, pursuant to § 302.535.1, his petition for a trial de novo in the Circuit Court of Ray County. The petition was heard on September 21, 1998, by the Honorable David L. Busch. At the hearing, Officer Bridgeforth was asked about the circumstances of the respondent's arrest. The officer testified that he stopped the respondent for speeding; that he smelled alcohol on his breath; that he admitted to drinking two beers, and that he failed the three field sobriety tests given. He also testified that he administered two breath tests, a portable one at the scene and one at the station. As to the result of the portable breath test, the officer testified that it was "consistent with that of a DWI charge," establishing probable cause to arrest.

When the Director initially offered at trial the result of the breathalyzer test given at the police station through the testimony of the arresting officer, the re-

[1] All statutory references are to RSMo Supp. 1996, unless otherwise indicated.

spondent objected on the basis of insufficient foundation. While arguing the objection, the Director offered the Department of Revenue records as to the driver's license of the respondent, to which the respondent's attorney had no objection to the extent it was being offered under the business record exception, but did object on the basis of relevancy and "other objections." The court admitted the exhibit. Immediately after the exhibit's admission, counsel for the Director again asked the arresting officer about the test result, drawing another objection from respondent's counsel and a request for leave to *voir dire* the witness, which was granted. In his *voir dire* of the officer, the respondent's attorney established that the officer had performed and checked every required item on the maintenance report for the BAC Verifier used to administer the test to the respondent, except that he failed to mark the report to indicate that he had checked the simulator temperature. The officer, however, testified that, although he had failed to indicate it on the maintenance report, he had checked the simulator temperature and found it to be accurate. At the conclusion of the respondent's attorney's *voir dire*, the Director's attorney was allowed to *voir dire* the officer, during which he testified that he had never completed a maintenance report in which the simulator temperature was not "appropriate."

The Director's attorney again asked the officer what the test result was. The respondent's attorney objected again and was in the process of explaining his objection when he was cut off in mid-sentence by the court's sustaining of his objection to the admission of the test result. The attorney for the Director then made an offer of proof in which Officer Bridgeforth testified that the breath test at the station indicated a BAC of .108 of one percent. Because the test result was excluded, the trial court sustained the respondent's petition to reinstate his license.

On September 21, 1998, the trial court entered its judgment reinstating the respondent's license, finding that the Director had failed to sustain his burden of proof to show that the respondent was arrested upon probable cause to believe that he was driving his motor vehicle while intoxicated and that his BAC was ten-hundredths of one percent or more at the time. As a result, the court ordered the Director to reinstate the respondent's license and to correct his official driving record to reflect this fact.

This appeal follows.

### Standard of Review

Our review of the trial court's judgment reinstating the license of the respondent, after it had been suspended for DWI, under § 302.505, is the same as in any other judge-tried case and is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Duffy v. Director of Revenue*, 966 S.W.2d 372, 376 (Mo.App.1998). As such, we must affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

### I.

In his sole point on appeal, the Director claims that the trial court erred in reinstating the respondent's driver's license because he carried his burden of proof to support the administrative suspension of the respondent's license under § 302.505 in that there was sufficient evidence to establish, as required by the statute for suspension, that there was probable cause to arrest him for DWI and that at the time his BAC was ten-hundredths of one percent or more by weight of alcohol in his blood. We disagree.

Section 302.505 authorizes the suspension or revocation of a driver's license by the Director for DWI and provides, in pertinent part, as follows:

1. The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was ten-hundredths of one percent or more by weight. . . .

Hence, under this statute, the Director makes a *prima facie* case for the suspension of a person's license by establishing by a preponderance of the evidence that: (1) there was probable cause to arrest the driver for DWI, and (2) at the time of the arrest, the driver's BAC was at least ten-hundredths of one percent or more by weight. *Barrett v. Director of Revenue,* 963 S.W.2d 717, 719 (Mo.App.1998). "Once [the] Director has established a prima facie case, the burden shifts to the driver to present evidence to rebut the prima facie case by a preponderance of the evidence." *Hurley v. Director of Revenue,* 982 S.W.2d 694, 696 (Mo.App.1998).

### A. Probable Cause to Arrest for DWI

■ We first address whether the Director met his burden to show that there was probable cause to arrest the respondent for DWI. " 'Probable cause exists when the facts and circumstances would warrant a person of reasonable caution to believe that an offense has been or is being committed.' " *Whitworth v. Director of Revenue,* 990 S.W.2d 115, 118 (Mo.App. 1999) (*quoting Kramer v. Director of Revenue,* 924 S.W.2d 308, 310 (Mo.App.1996)). "Whether probable cause existed to arrest the driver is determined 'in relation to the circumstances as they would have appeared to a prudent, cautious, and trained police officer.' " *Id.* (*quoting Kramer,* 924 S.W.2d at 310). The respondent here was initially stopped by Officer Bridgeforth for speeding. When the officer approached the respondent's vehicle to issue him a speeding citation, he smelled intoxicants on his breath. As a consequence, the officer administered three field sobriety tests which, in his opinion, the respondent

failed. The officer also administered a portable breath test. Officer Bridgeforth testified that this test indicated that the respondent's BAC was "consistent with that of a DWI charge." This evidence was sufficient to establish probable cause for the officer's arrest of the respondent for DWI satisfying the first element of the Director's *prima facie* case for suspension. *Halmich v. Director of Revenue,* 967 S.W.2d 693, 695 (Mo.App.1998).

Having decided that the Director met his burden to establish probable cause for the respondent's arrest for DWI, we turn to the issue of whether he met his burden to establish that the respondent was driving a motor vehicle with a BAC of ten-hundredths of one percent or more by weight of alcohol in his blood.

### B. BAC of .10 of One Percent or More

At the hearing on the respondent's petition, the Director attempted to establish that the respondent's BAC was equal to or greater than ten-hundredths of one percent by having Officer Bridgeforth testify as to the result of the breath test given to him at the police station. However, the respondent objected to the admission of the test result, contending that the Director had not established a sufficient foundation for its admission. A fair reading of the record would indicate that the respondent was objecting on the basis that the officer had failed to perform each and every required item on the maintenance report checklist as to the BAC Verifier used to administer the breathalyzer test. Specifically, he was contending that the officer had not determined, as required, the simulator temperature, which the officer testified was critical to an accurate alcohol breath test. His contention was based on the fact that the officer had marked in the report that he had performed all the required steps in the maintenance report, except determining the simulator temperature.

■ To establish a proper foundation for the admission of the result of an alcohol breath test to satisfy the BAC requirement of § 302.505, the Director was required to show that: (1) the test was performed by following the techniques and methods approved by the Department of Health, (2) by a person possessing a valid permit, and (3) using equipment and devices approved by the Department. § 577.020, RSMo Supp.1998; *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–41 (Mo. *banc* 1992). The third requirement mandates that, "[i]f timely objection is made to the admission of blood-alcohol test results, the department must prove the machine used in the test had been checked by a Type II permit holder within thirty-five days of the date ... the breathalyzer test was administered," *Lasley v. Director of Revenue*, 954 S.W.2d 327, 331 (Mo. *banc* 1997), as required by 19 CSR 25–30.031(3). The regulations regarding the maintenance checks dictate that compliance is mandatory. *Turcotte v. Director of Revenue*, 829 S.W.2d 494, 496 (Mo.App.1992); 19 CSR 25–30.031(7)(B); BAC VERIFIER MAINTENANCE REPORT, Form # 5.

■ The Director contends that the respondent did not object to the breathalyzer test result with sufficient specificity so as to require the admission of the maintenance report to establish a *prima facie* case for suspension, and thus, any related error in its completion was inconsequential. As he contends, before the admission of the maintenance report is required to establish a proper foundation for the admission of a breathalyzer test result, there must be an objection to the admission of the test result "sufficiently clear and definite to enable the trial court to understand the reason for the objection." *Lasley*, 954 S.W.2d at 331. An objection is sufficient for this purpose if its underlying reason is readily apparent to the court. *Id.*

With respect to this issue, the respondent initially objected to the admission of the breath test result through the officer's testimony on the basis of insufficient foundation. While arguing the objection, the Director offered the driving records of the respondent as maintained by the Department of Revenue, to which the respondent's attorney had no objection *to the extent it was being offered under the business record exception*, but did object to the admission of the test result as referred to in his driving records on the basis of relevancy and "other objections." The court admitted the exhibit. Immediately after the exhibit's admission, counsel for the Director again asked the arresting officer about the breathalyzer test result, drawing another objection from respondent's counsel and a request for leave to *voir dire* the witness, which was granted. After *voir dire* of the witness by both sides, the Director's counsel again asked the officer about the test result. The respondent's attorney again objected and was in the process of explaining his objection when he was cut off in mid-sentence by the court's sustaining of his objection. Given the questions and answers of the officer during his *voir dire* and the trial court's abrupt ruling during counsel's explanation of his objection for the record, there can be no doubt as to the basis for the respondent's assertion of an insufficient foundation for admission of the test result. Based on the record, we find the respondent's objection to have been sufficiently specific to have required the admission of the maintenance report in order to lay a proper foundation for the admission of the BAC test result. As such, we turn to the issue of whether the Director carried his burden of establishing the respondent's BAC to suspend his license.

Judge Hanna in his dissent contends that the respondent failed to object to the admission of the department's records, which contained references to the respondent's BAC, and as such there was evidence properly in the record to support the Director's *prima facie* case for suspension as to the respondent's BAC. In making this contention, he relies on *Reinert v.*

*Director of Revenue,* 894 S.W.2d 162, 164 (Mo. *banc* 1995), which did hold that, if the blood alcohol test result is otherwise admitted without objection, then the driver waives any objection to such evidence. *Id.* However, as discussed, *supra,* the record does not support Judge Hanna's assertion that the respondent did not object to the admission of the records in question or the references therein to the BAC test result. Although the record reflects that he had no objection to the records being "offered" under the business records exception, he made it clear that he was objecting to their admission as to the BAC test result, when the trial court cut him off and admitted the records over his objection.

■ Having determined that the respondent's objection was sufficient so as to require the admission of the BAC verifier maintenance report by the Director to establish a *prima facie* case for suspension, we now turn to the issue of whether this was, in fact, done. In order to lay a proper foundation for the admission of the breathalyzer test result, Officer Bridgeforth was asked by the Director's counsel about the procedure he used to administer the test. He testified that he administered the test to the respondent using a BAC Verifier for which he had a Type II permit. He also testified that he observed the respondent for fifteen minutes prior to the test and that he did not smoke, eat, drink, vomit, or place anything in his mouth prior to the test and that the breath analysis machine was functioning properly at the time of the test. He further testified that he had performed a maintenance check on the BAC Verifier used to administer the breath test given the respondent on January 28, 1998, and that, although he failed to indicate as such on the maintenance report, he did check the simulator temperature, as required.

As to the issue of whether the maintenance check was done correctly so as to establish a proper foundation for admission of the test result, the record would reflect what is arguably conflicting evidence. On the one hand, the Director, through the testimony of the officer, introduced evidence that the simulator temperature was checked as part of his required maintenance check. On the other hand, the respondent established, through his *voir dire* of the officer, that, although he claimed that he had checked the simulator temperature as required, he did not mark this fact on the BAC Verifier maintenance report. With respect to this evidence, the Director, in effect, contends that, because there was no inconsistent or contradictory evidence concerning whether the maintenance check officer checked the simulator temperature as required, the trial court was required, as a matter of law, to believe the testimony of the arresting officer regarding this issue, and thus, the respondent's BAC test result should have been admitted, making a *prima facie* case for suspension. We disagree that there was no inconsistent or contradictory evidence on this issue.

Rule 73.01(a)(3) [2] provides, in pertinent part, that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." In *Reinert,* the driver, Mr. Reinert, relied on this provision of the rule in contending that the Missouri Supreme Court should affirm the trial court's reinstatement of his license. Based on the rule, he argued that, if the trial court chose to disbelieve the testimony of the officer, it could have found that the Director failed to carry the burden of establishing that he was the driver of the motor vehicle in question and that there was probable cause to arrest for DWI. *Reinert,* 894 S.W.2d at 164. The court rejected this argument on the basis that

2. All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise indicated.

the arresting officer's testimony was unequivocal and *uncontradicted* that Reinert was the driver and that there was probable cause to arrest, and as such, the record would not support the trial court's finding to the contrary and its judgment reinstating his license based on this finding. *Id.*

In *Hawk v. Director of Revenue*, 943 S.W.2d 18, 22 (Mo.App.1997), the Southern District of this court recognized that, as to DWI administrative suspension and revocation cases, *Reinert* stands for the proposition that "deference to a trial court's findings is not required where none of the evidence is controverted and the case is virtually one of admitted facts or where there is no conflict in the evidence." *Id.* We agree. However, as corollary to *Reinert*, we also agree with the *Hawk* court's holding that "when any part of the testimony of a witness can reasonably be viewed as inaccurate or inconsistent, the usual rule attends and we give deference to the trial court in its resolution of all witness credibility questions." *Id.* (*citing Thurmond v. Director of Revenue*, 759 S.W.2d 898, 899 (Mo.App.1988)). This holding was recognized in *Brussel v. Director of Revenue*, 962 S.W.2d 454, 457 (Mo.App.1998). In *Brussel*, the Eastern District, citing *Hawk*, held that the question of whether the Type II permit holder had checked the simulator temperature, as required to establish a proper foundation for admission of the breathalyzer test result, was a question of fact which was left to the trial court, as the fact finder, involving a credibility determination to which it was required to defer. *Id.*

*Reinert*, *Hawk*, and *Brussel* teach us that, where there is inconsistent and contradictory evidence with respect to an underlying fact on which the admission of the breathalyzer test result is based, the trial court is free, as in any other case, to believe or disbelieve the evidence it chooses in admitting or excluding the test result, and that we must defer to its determination. Hence, the Director's assertion that the trial court, here, was required to believe, as a matter of law, the officer's testimony with respect to whether he actually determined the simulator's temperature is not correct, unless the officer's testimony on this issue was uncontroverted.

On the issue of whether there was inconsistent or contradictory evidence sufficient to raise a credibility issue for the trial court to resolve in determining whether to admit the respondent's BAC test result and affirm the suspension of the respondent's license, the dissent joins the Director in contending that there was not. In support of their contention they cite several cases, which we discuss, *infra*, and which they assert support their claim that the test result should have been admitted in the instant case because the mere mechanical failure to properly complete a required form in the approved process for BAC testing will not invalidate a test result and prevent its admission in evidence to establish the BAC of the driver. In effect, what the Director and the dissent are contending is that evidence of a failure to complete a required form does not controvert the testimony of an officer that he checked the simulator temperature during the maintenance check as required, and thus, pursuant to *Reinert*, the trial court was required to believe his testimony and admit the test result.

The Director and the dissent's reliance on the cases cited is misplaced in that, in arguing their application, they mistakenly assume that the issue in this case is one of form over substance as opposed to a credibility call with respect to inconsistent and contradictory evidence on an issue affecting the test result's reliability. In contending as they do, the dissent and the Director do not distinguish between two significantly different fact scenarios: (1) the officer conducting the maintenance check performs a required step in the check, but fails to mechanically indicate it on his report; and (2) the officer does not indicate on the report that he performed a required step because he did not, in fact, perform it as required. The first is simply

a mechanical failure, which would have no bearing on the accuracy of the test result, whereas the second would. It is the difference between invalidating the test simply on form, as opposed to invalidating the test because the trial court believed that the failure to check the box was evidence that a vital step, required in insuring the proper functioning of the breathalyzer machine used to insure the breathalyzer test's reliability, was not performed. In the case of the latter, it is not the failure to check the box that ultimately controls, but the fact that it can be inferred therefrom that the maintenance officer failed to conduct the maintenance check as required, thereby compromising the test's accuracy. We believe the cases cited by the Director and the dissent must be viewed in light of this distinction, as we discuss, *infra*.

The Director and the dissent both cite *Shine v. Director of Revenue*, 807 S.W.2d 160 (Mo.App.1991) in support of their contention that the failure to check a box on the maintenance checklist report is not sufficient evidence from which the trial court could find that the maintenance check was not correctly done, invalidating the test. In *Shine*, the court reversed the trial court's reinstatement of the driver's license. The trial court had reinstated on the basis that the arresting officer had not complied with the procedures promulgated by the Missouri Department of Health in administering the BAC test in that he did not check the boxes on the test certification at the time of the test, as required by regulation, but at a later date. *Id.* at 162. The court held that there had been "substantive compliance" with the applicable regulations, which was sufficient to make a *prima facie* case for suspension. *Id.* at 163. However, the court, in discussing *Tomkins v. McNeil*, 782 S.W.2d 400 (Mo. App.1989), on which it heavily relied in reaching its decision, stated:

> Here, the trial court did not, in its findings as in *Tomkins*, express an affirmative opinion as to the officer's credibility or the driver's intoxicated state. Rath-

er, it relied on the *literal procedural requirements of physically* checking the boxes in the certification section of the intoxication form and sustained the driver's petition.

*Shine*, 807 S.W.2d at 163 (emphasis added). In *Tomkins*, the procedural defect was the failure of the State to produce a printout of the BAC result. And, although the trial court recognized that the printout had nothing to do with insuring the accuracy of the test result, it refused to uphold the suspension because of the technical non-compliance with the applicable regulations. *Tomkins*, 782 S.W.2d at 402.

It is significant that both *Shine* and *Tomkins* were decided on the issue of literal or strict procedural compliance with regard to the applicable health regulations and their required forms, while assuming that the alleged non-compliance did not affect the test result's reliability, unlike here. Of equal significance is the fact that the *Shine* court obviously appreciated the distinction that we draw here between deciding whether to uphold a driver's suspension on the issue of literal compliance as to completion of required forms and paper work versus the failure to perform a critical step in the required procedure that affects the reliability of the test result. This is readily apparent from the court's statements in support of its decision that: (1) "at trial Shine did not raise any question as to the accuracy of the test, the qualification of the officer, or the proper functioning of the machine"; *Shine*, 807 S.W.2d at 162, and (2) the "testing process is a procedural requirement to insure accurate results." *Id.* at 163.

The Director and the dissent also cite *Bautista v. Director of Revenue*, 843 S.W.2d 1, 2–3 (Mo.App.1992) and *Young v. Director of Revenue*, 835 S.W.2d 332, 335 (Mo.App.1992) in support of their contention. In these cases, the issue was whether the trial court's decision *refusing* to reinstate the person's license should be affirmed in light of the fact that the forms used were not in compliance with the ap-

plicable health regulation. The courts in those cases held simply that, even though the forms used did not technically or literally comply with the forms provided for by state regulation, the testimony of the arresting officers as to the procedure followed was sufficient for the trial court to allow the introduction of the test results. *Bautista*, 843 S.W.2d at 3; *Young*, 835 S.W.2d at 335. In other words, it was not error for the trial court, as the fact finder, in refusing to reinstate the driver's license, to believe and rely on the officer's testimony that he conducted the test in accordance with required procedure. Neither case was reviewed or decided on whether a step in the testing process, which was critical to the reliability of the test result, was actually performed which would affect its admission. The court found simply that there was evidence, which if believed by the trial court, was sufficient to support its decision in refusing to set aside the driver's suspension.

The Director and the dissent also cite *Hurley v. Director of Revenue*, 982 S.W.2d 694, 696 (Mo.App.1998) in support of their contention. There, the trial court reinstated the driver's license, having excluded the BAC test result because it found that there was insufficient evidence of proper maintenance of the breath analyzer machine used. *Id.* The dispute as to the report centered on the fact that the original report filed with the Department of Health contained inconsistent times for administering the test and incorrect lot numbers for the simulator solution, which the arresting officer testified he corrected later in the report kept at the station. *Id.* The Eastern District of this court reversed, holding that the "Director met the burden of establishing a prima facie case, driver failed to rebut this with evidence that the maintenance report was not reliable and therefore we conclude the results of the breath analyzer test should have been admitted." *Id.* at 697. For the reasons discussed, *infra*, we believe that this is bootstrapping logic and confuses admissibility of the test result introduced to

make a *prima facie* case for suspension with burden shifting *after* a *prima facie* case is made by introducing the test result.

 In order to make a *prima facie* case for suspension, as discussed, *supra*, the Director must establish, *inter alia*, that the driver was driving with a BAC of ten-hundredths of one percent or more. *Barrett*, 963 S.W.2d at 719. This is done by introducing the BAC test result, as was done in *Hurley*. In this respect, it is the Director's burden to establish the admissibility of the test result, not the respondent's. *Sellenriek*, 826 S.W.2d at 340–41. The law and common sense dictate that the driver has no burden as to the admissibility of the test result, which the Director seeks to introduce. And, logically, it cannot be reasoned in a circle that the test result establishes a *prima facie* case by showing that the driver drove with a BAC of ten-hundredths of one percent or more, which showing then shifts the burden to the driver to rebut the *prima facie* case by showing that the test result was not reliable, and if he fails to do so, then the test result was admissible. In determining whether the breath test result should be admitted to allow the Director to make a *prima facie* case, the issue is whether the *Director* has carried his burden as to its admissibility. Thus, to the extent *Hurley* can be read as shifting the burden to the driver to rebut the admissibility of the BAC test result, we cannot logically follow it. Furthermore, we do not believe that the decision in *Hurley* controls here in any event because ultimately it rested on the appellate court's finding that the inconsistencies alleged did not affect the reliability of the maintenance report, *Hurley*, 982 S.W.2d at 697, and we believe, as discussed, *infra*, that there was evidence here from which the trial court could have found that the test result was unreliable.

The dissent also cites and relies heavily on *Anderson v. Director of Revenue*, 969 S.W.2d 899, 901 (Mo.App.1998). *Anderson*, like *Hurley*, misses the mark in

that it confuses the Director's burden in making a *prima facie* case for suspension and the resulting burden shifting with the Director's burden to establish the admissibility of the BAC test result in order to make a *prima facie* case for suspension. In *Anderson*, the Director appealed from the trial court's order reinstating the driver's license. *Id.* at 900. At issue was whether the proper foundation had been laid to admit the breathalyzer test result, specifically, whether the required 35–day maintenance check had been done as required. *Id.* at 902. The driver challenged the maintenance check on the basis that the Type II permit number reflected on the report was not the permit number of the officer who actually did the check, calling into question in his view the accuracy of the maintenance check. The case was submitted to the trial court on the record only. *Id.* at 901. The *Anderson* court, rather than deciding the case on the issue of whether the discrepancy in the maintenance report complained of was sufficient for the trial court to conclude that the accuracy of the breathalyzer test was affected such that a proper foundation was not laid by the Director for the test's admission, jumped this step and found that a *prima facie* case had been made, which assumes the admissibility of the test result, and held that it was up to the driver to "rebut" the *prima facie* case with evidence of the breathalyzer machine's malfunction. *Id.* at 903. This is the same circular logic used in *Hurley* and impermissibly shifts the burden to the driver to establish the "admissibility" of the test result, which the Director seeks to introduce to make a *prima facie* case. This is and should not be the law. Further compounding the problems with the *Anderson* decision is the fact, that unlike here, the case was submitted on the record only. In any event, the *Anderson* court left unanswered the question of whether the discrepancy in the report rendered the test result inadmissible for a lack of foundation such that the Director failed to make a *prima facie* case, which then and only then

would have shifted the burden to the driver to show that the machine malfunctioned and, in our view, adds nothing to our discussion of the case at bar.

In the instant case, Officer Bridgeforth, a Type II permit holder, testified that if the simulator temperature was not checked and found to be within the allowed range, 34 degrees C +/-0.2 degrees C, this would cause the alcohol limits or the alcohol solution to be higher or lesser. With respect to the solution used here, the maintenance report indicated that three tests were required; that "[a]ll three tests must be within ±5% of the standard value and must have a spread of .005 or less"; and "MUST READ BETWEEN 0.095% and 0.105% INCLUSIVE." Tests 1 and 2 reflected a standard value of .097, with Test 3 showing a value of .098. These values would be within the required values, *assuming*, of course, that they were not skewed as the result of an unacceptable simulator temperature. Thus, on the face of the circumstances presented, there can be no argument as to the fact that the respondent's BAC test result would be rendered, *per se*, unreliable, unless the Director could show that the breathalyzer machine used was functioning properly through the required maintenance check, including a determination of the simulator temperature, as mandated by the applicable regulation. As such, whether the trial court believed that the simulator temperature was determined as required is not a case of elevating form over substance. It is an issue that the trial court was required to determine in order to insure the accuracy of the test result, which goes to the very heart of whether the respondent's suspension should be upheld. Certainly, no one would argue with the proposition that, regardless of the obvious need to eradicate our roadways of drunk drivers, a citizen's license should not be suspended or revoked on the basis of his or her BAC as established by a test, unless that test can be said to be accurate within a reasonable degree of scientific certainty.

In light of the foregoing discussion, in determining whether the trial court was correct in excluding the test result in our case, we must decide from the record whether there was inconsistent or contradictory evidence from which the trial court could have found that the officer, when conducting the maintenance check, failed to check the simulator temperature and which would support its exclusion of the test result for a lack of a proper foundation.

The conflicting or contradictory evidence in this case, as to whether the maintenance check was correctly done so as to admit the breathalyzer test result, comes from the fact that the officer conducting the maintenance check failed to mark the box on the required form indicating that he had checked the simulator temperature and found it to be within the allowed range. We believe that this evidence is sufficient from which the trial court could have inferred that the officer had, in fact, failed to perform that critical step in the maintenance check, *assuming it found that the officer's testimony on this issue was not believable.* As such, it was proper for it to find that the Director failed to lay a proper foundation for the admission of the breathalyzer test result such that he did not make a *prima facie* case for suspension. It goes without saying that if the trial court here had chosen to believe the officer's testimony as to the fact he determined the simulator temperature, regardless of what the report reflected, and admitted the test result, we would be required to affirm its decision to uphold the respondent's suspension, inasmuch as the majority recognizes that we must leave credibility calls to the trial court regardless of our view of the result reached. *Hawk,* 943 S.W.2d at 22; *Brussel,* 962 S.W.2d at 457.

In contending that the failure to check on the maintenance report the appropriate box to indicate that the officer had determined the simulator temperature is not evidence from which the trial court could reasonably find that a proper foundation was not laid for admission of the test result, affecting its accuracy, Judge Hanna in his dissent, in our view, overlooks two very significant circumstances.

In the first circumstance, unlike other failed steps in the maintenance and testing procedure that might be detectable after the fact because they manifest themselves in observable malfunctions of the breathalyzer, the same is not true of the officer's failure to check the simulator temperature. Other than the officer's report or his own testimony that he failed to check the simulator temperature, there is no way of knowing if this critical maintenance check was ever performed. In the case of the officer's own testimony, we would assume, given the fact that the accuracy of the BAC test cannot be guaranteed without the proper functioning of the breathalyzer, as verified through a required maintenance check, including checking the simulator temperature, that if he testified that he did not check it as required, that the Director would not pursue a suspension or revocation, or if he did, the trial court would be quick to reinstate, which would be upheld on appeal. Thus, as a practical matter, that only leaves the maintenance report as an avenue for a driver to attack the accuracy of the test based on the officer's failure to perform the simulator temperature check, as required. However, Judge Hanna would seek to close this avenue, in effect, denying the driver of any means to attack the accuracy of the test on this basis and requiring the trial court, as a matter of law, to believe the officer's testimony; rubber stamping his actions, and insuring the desired result of suspension.

The second circumstance involves the fact that there can be no doubt the Director would contend, and rightfully so, that the marking of the other steps on the checklist was evidence of their being performed. This is precisely why reports are routinely introduced into evidence by the Director in DWI suspension cases and

would be in keeping with why the maintenance report exists in the form it does, providing spaces for the purpose of marking off the required steps of the maintenance check as they are performed. Our appellate courts have routinely sanctioned the use of reports by the Director to establish, based on the actions indicated in the reports as having been performed, a *prima facie* case for suspension under § 302.505. *See Plank v. Director of Revenue*, 982 S.W.2d 811, 813–14 (Mo.App. 1998); *Anderson*, 969 S.W.2d at 902; *Buschmann v. Director of Revenue*, 969 S.W.2d 766, 768 (Mo.App.1998); *Smith v. Director of Revenue*, 948 S.W.2d 219, 221 (Mo.App.1997). As such, to prohibit a driver in a DWI license suspension or revocation case from arguing that the officer's failure to check on the required form that a step was completed is evidence of his failure to perform that step, while allowing the Director to argue the reverse situation, would be inconsistent and unreasonable, and would have the appearance of the appellate courts favoring one litigant over another to insure a desired result. This simply cannot be countenanced.

■ Judge Hanna, based on the respondent's failure to file a brief, accuses the majority of "fetter[ing] out this credibility issue and develop[ing] the argument that the trial court relied on an unchecked box to determine that the officer did not test the [simulator] temperature." In response, we would first note that the law is well settled that a respondent, unlike an appellant, is not required to file a brief and has no burden on appeal, and as such, may rely on the presumption that the trial court's judgment is correct and is not required to raise any issues with the appellate court in order for it to affirm the trial court's action. *Mitchell v. Robinson*, 360 S.W.2d 673, 676 (Mo.1962); *Lakin v. Postal Life and Cas. Ins. Co.*, 316 S.W.2d 542, 549 (Mo.1958); *State ex rel. Neal v. Karl*, 627 S.W.2d 913, 914 (Mo.App.1982). Second, we would further note that any fair reading of the record would indicate that the trial court here believed that the maintenance check was not performed as required based on the officer's failure to determine the simulator temperature, which necessarily raises a credibility issue, in that the officer testified to the contrary. In light of the foregoing, we fail to see, as the dissent obviously tries to imply, how the respondent's failure to file a brief weakens the majority position.

We fully appreciate the fact, as pointed out by several of the cases cited, that drunk drivers present a danger to the motoring public and aggressive efforts to control this problem are, without question, commendable. However, no matter how commendable the purpose, appellate courts cannot sanction a procedure whereby the trial *de novo* provided in § 302.535, for reviewing license suspensions and revocations for DWI's, is rendered nothing more than a rubber stamping of whatever conclusion was reached by the arresting officer in his or her report or testimony. To do so would be to violate a suspended driver's right to due process. The seriousness of an issue can never be used as an excuse to subvert due process.

For the reasons stated, we find from the record that there was sufficient evidence from which the trial court could have reasonably inferred that the simulator temperature was not checked by the officer, as required, calling into question the proper functioning of the BAC verifier used in this case and the reliability of the respondent's breathalyzer test result, and as such, was justified in excluding it as being inadmissible for an insufficient foundation. Thus, we hold that the trial court did not err in reinstating the respondent's license in that there was no evidence before the court from which it could conclude that the respondent was driving with a BAC of .10 percent or more, without which the Director could not make a *prima facie* case for suspension of the respondent's license under § 302.505.

Point denied.

## Conclusion

The judgment of the circuit court reinstating the respondent's driver's license is affirmed.

SPINDEN, J., concurs.

HANNA, J., dissents in separate opinion.

HANNA, Judge, dissenting.

I respectfully dissent. There was other competent and substantial evidence of the defendant's blood alcohol level in excess of the legal limit. *See Reinert v. Director of Revenue*, 894 S.W.2d 162 (Mo. banc 1995). More importantly, I do not agree that the mechanical failure to check a box on a report is substantial evidence that the officer failed to perform the test in light of his unequivocal and unchallenged testimony that he did perform the required check, and the lack of any evidence that the simulator malfunctioned. *See Hurley v. Director of Revenue*, 982 S.W.2d 694 (Mo. App.1998); *Anderson v. Director of Revenue*, 969 S.W.2d 899 (Mo. App.1998); *Bautista v. Director of Revenue*, 843 S.W.2d 1 (Mo.App.1992); *Young v. Director of Revenue*, 835 S.W.2d 332 (Mo.App.1992); *Shine v. Director of Revenue*, 807 S.W.2d 160 (Mo.App.1991). The legislative intent requiring compliance with the Department of Health regulations is not to accord procedural protection to drunk drivers. *Turcotte v. Director of Revenue*, 829 S.W.2d 494, 496 (Mo.App.1992).

The trial court sustained the defendant's objection to Officer Bridgeforth's testimony that the defendant's blood alcohol was .108 percent and, without explanation, entered its order that the director failed to meet his burden of proof based "on this breath test." The court then reinstated Endsley's driving privileges. The court's formal order provided no further explanation.

In *Reinert*, where the driver objected to the maintenance report of the blood alcohol testing machine, the court excluded the results of the blood alcohol test and found the issues in favor of the driver. 894 S.W.2d at 164. However, just as the case before us, in *Reinert*, other evidence of the driver's blood alcohol was received into evidence. The police officer that administered the test to Reinert testified, without objection, to the blood alcohol results. *Id.* Similarly, in the case before us, the 13-page record of the Driver's License Bureau was received over the driver's objection. The report contained numerous references to the blood alcohol test result, including the printout slip showing the .108 percent result. In *Reinert*, the Supreme Court held that the "trial court, therefore, should have considered the [other admitted] evidence." *Id.* The Supreme Court found that it was irrelevant that the driver's objection to the maintenance report was sustained where the result of the blood alcohol test was otherwise admitted and reversed the trial court's reinstatement of driving privileges. *Id.*

*Reinert* also speaks to the second reason for my disagreement with the majority—that the officer's failure to check a box was evidence that the officer failed to perform the test. In *Reinert*, the driver argued that even if the blood alcohol content was improperly excluded, the trial court's decision must be affirmed because the reviewing "court must assume that all fact issues upon which no specific findings were made were found in accordance with the result reached." *Id.* The driver argued that the trial court may have disbelieved the testimony of the officer thus, the director failed to bring forth sufficient evidence. *Id.* In the case before this court, the only evidence presented was Police Officer Bridgeforth's testimony. Deference to the trial court's findings is not required where the evidence is uncontroverted and, as it was before us, there is no conflict in the facts. *Hawk v. Director of Revenue*, 943 S.W.2d 18, 22 (Mo.App. 1997). As in *Reinert*, Officer Bridgeforth was "unequivocal" in his testimony that he performed the particular test, and he was the sole witness at trial, a

fact noted by the *Reinert* court. *Reinert,* 894 S.W.2d at 164. The trial court's decision allowing evidence of the driver's BAC, over objection, should not now be construed as a credibility call because a box was not checked on the maintenance report. It seems to me, more likely than not, that the trial court ruled the objection on procedural grounds, not whether it disbelieved Officer's Bridgeforth's testimony that he had checked the simulator temperature. In sum, it is too great of a stretch under the factual scenario here, to affirm pursuant to Rule 73.06(a)(3), that if there is no finding by the trial court, all fact issues shall be considered in accordance with the result reached. In doing so we speculate as to the basis of the trial court's ruling in order to justify its ruling.

As this court noted in *Young,* "[a] court that favors the form or content of the official reports over witness testimony on the trial de novo so as to preclude evidence from the arresting officer as Young contends for invites error." 835 S.W.2d at 335. This court continued "[t]o void a suspension at the trial de novo on flaws in literal procedural observances flouts the legislative purpose, 'to expeditiously remove the most dangerous drunk drivers from Missouri roadways.'" *Id.* (quoting *Collins v. Director of Revenue,* 691 S.W.2d 246, 252 (Mo.banc 1985)). In *Young,* the police officer filled out the report on unofficial forms not prescribed by the division of health. 835 S.W.2d at 333-34. The Driver argued that in order for the chemical test to be valid it must be performed in accordance with the "methods, devises and standards" approved by the Missouri Department of Health as required by §577.026(1) and §577.037.4, RSMo. 1994. The court noted that to prove that the test results are invalid, there must be evidence of a mal-

function. *Id.* at 335. Here, as in *Young,* there was no evidence of a machine malfunction or even a claim that the test results were invalid.[1]

The cases of *Shine,* 807 S.W.2d 160, *Young,* 835 S.W.2d 332, and *Bautista,* 843 S.W.2d 1, all stand for the proposition that failing to check a box on an official form will not invalidate the test results if there is evidence to support the test. In all three cases, the police officers used the incorrect forms and, thus, did not mechanically check the boxes on the official forms regarding the certification of the machine. After the blood alcohol test was administered in *Shine,* the officer failed to check the four boxes which certified that there was no deviation from the approved procedures, that the instrument was functioning properly, and that he was authorized to operate the instrument. 807 S.W.2d at 161. At trial, the defendant did not question the accuracy of the test, the qualifications of the officer, or the proper functioning of the machine. *Id.* at 162. However, the officer testified that he followed each of the steps set out in the checklist and even though he did not mechanically check the boxes on the form, he made the certifications that appeared on the checklist. *Id.* at 161. As in the case before us, the trial court expressed no findings showing "an affirmative opinion as to the officer's credibility or the driver's intoxicated state," *Id.* at 163. The Eastern District court found the sum of the evidence sufficient to show that Shine may have been guilty of driving while intoxicated, and remanded the cause for a new trial. *Id.* at 163. Likewise, in *Young,* some of the boxes were not checked by the officer, but this court held that the *prima facie* proof of the director's case is not confined to the reports and records available, but rather may be

---

1. The respondent has never, at any point in the process, challenged the test results. The majority suggests that it is a fair inference, and it may be, that the tenor of counsel's *voir dire* examination would suggest that he claims that the blood alcohol test result was skewed. However, there is nothing in the record that

such a contention was made in the trial court--by way of argument or evidence--and, not having been favored with a brief from the driver on appeal, it is a tenuous inference that the majority clings to in order to sustain the reinstatement of driver's privileges.

proved by all available evidence. 835 S.W.2d at 335. *See also Bautista* (ruling that the officer testified that she followed all of the necessary steps and such testimony eliminates any alleged deficiency for lack of boxes being checked.). 843 S.W.2d at 3.

My disagreement boils down to the fact that one cannot set up a credibility issue on the fact that an officer failed to check a box concerning the temperature of the solution used in the machine. Under these facts, *an unchecked box does not prove that the machine malfunctioned*. It may prove that the officer forgot to check the box, or it may even prove that the temperature was not checked. It cannot be inferred, however, that the machine malfunctioned. *See Thurman v. Director of Revenue*, 745 S.W.2d 260, 262 (Mo.App. 1988)(ruling that the fact that the breathalyzer had not been calibrated for three weeks before the driver's arrest did not prove that it malfunctioned); *Bradford v. Director of Revenue*, 735 S.W.2d 208, 210 (Mo. App. 1987)(finding that the wrong date on the breath analysis printout was not evidence of malfunction of the machine).

It should be noted that the driver neither argued here nor presented any evidence in the trial court that the unchecked box was evidence that the temperature test was not conducted or, more importantly, that it was evidence that the machine malfunctioned. Furthermore, as discussed supra, the trial court made no finding that the machine was not properly tested for temperature when it made its terse statement that the director failed to meet its burden. "Without findings of fact we cannot determine on the record before us whether the trial court's action was supported by substantial evidence." *Frank v. Director of Revenue*, 925 S.W.2d 477, 480(Mo.App.1996) (citing *Thurman*, 745 S.W.2d at 262.

Simply stated, the driver must rebut with evidence, and not merely point out an inconsistency. *Anderson*, 969 S.W.2d at 903; *Hurley*, 982 S.W.2d at 697. Finally, this court has no idea what the respondent's contention is on this matter, as he has not filed a brief with us. *Fitzgerald v. Director of Revenue*, 922 S.W.2d 478, 479 n.3 (Mo.App. 1996). While he has no legal obligation to file a brief with the court, the failure to present one's position, leaves us to decide the case without the driver's argument and authorities. *Id.* It is the majority that has fettered out this credibility issue and developed the argument that the trial court relied on an unchecked box to determine that the officer did not test the temperature. I believe that the unchecked box, in light of all factors, simply fails to meet the substantial evidence standard upon which a court may base a decision that the breathalyzer test was in accurate. It is a case where an officer failed to check one out of over 150 boxes provided on forms that comply with the Department of Health regulations. There must be some probative evidence that the failure to check a box definitely resulted from a malfunction of the test results, not simply that it may have.

Deference to the findings of the trial court is not required where the evidence is uncontroverted, and the case is virtually one of admitted facts or where the evidence is not in conflict. *See Epperson v. Director of Revenue*, 841 S.W.2d 252, 255 (Mo.App.1992). For example, in *Hedrick v. Director of Revenue*, there was evidence from the defendant on the issue of the officer's probable cause to arrest. 839 S.W.2d 300, 302 (Mo.App. 1992). The driver testified that he did not believe that he was weaving between lanes at a high rate of speed. *Id.* There was also evidence from the arresting officer sustaining probable cause for the arrest. *Id.* at 301-02. The trial court found in the driver's favor and ordered reinstatement of his license. This court reversed and ordered the trial court to reinstate the director's order because the defendant's evidence did not defeat any of the elements for which the director

bore the burden. *Id.* at 303. *See also Thurman,* 745 S.W.2d at 262.

In *Anderson,* the trial court found in favor of the driver because the permit holder's number on the Maintenance Report was not that of the permit number of the individual who completed the form. 969 S.W.2d at 901. The appellate court stated that the director satisfied its *prima facie* burden by proving that there was probable cause of the arrest, and that the alcohol concentration in the driver's blood was .10 percent or greater. *Id.* at 901-02 (citing §302.505 and §302.530, RSMo 1994). The blood alcohol is established upon a showing that: "(1) the test was performed by following approved techniques and methods of the Division of Health; (2) the operator held a valid permit [the contested issue in *Anderson*]; and (3)the equipment and devises were approved by the Division." *Id.* at 902 (quoting *Sellenriek v. Director of Revenue,* 826 S.W.2d 338, 340-41 (Mo. 1992)). Once the director has shown that there was probable cause for the arrest and that the blood alcohol was .10 percent or greater, the burden shifts to the driver to rebut the state's *prima facie* case by a preponderance of the evidence. *Id.* The court cautioned against submitting a case on the records alone, as was done in *Anderson,* because of the "risk of the inability to explain discrepancies." *Id.* (citing *Smith v. Director of Revenue,* 948 S.W.2d 219, 222 (Mo.App. 1997); *Cannon v. Director of Revenue,* 895 S.W.2d 302, 306 (Mo.App.1995)). The director in the case before us did just that by having the police officer explain that he tested the temperature, although he failed to check the box.

The challenge in *Anderson,* was that the state's evidence failed because it did not meet the requirement of a maintenance check of the breath test machine within 35 days, because the permit number on the maintenance form was different than that of the Type II permit that the director submitted. 969 S.W.2d at 902. The trial court agreed that there was not enough evidence to prove that the machine had been properly maintained. *Id.* This court

held that an incorrect permit number does not invalidate a maintenance check, *Id.* at 903. In order to do this, the driver must prove that the machine was not inspected by a Type II permit holder at least 35 days prior to the breath test. *Id.* In order to rebut the *prima facie* case, Anderson would have to offer proof that the machine had not been inspected within 35 days. *Id.* Thus, Anderson did not rebut the *prima facie* case of the director. *Id. See also Bradford,* 735 S.W.2d at 208 (recording the wrong date on the breathalyzer printout did not invalidate the test results.) Finally, in *Hurley,* the evidence showed that the records were incorrectly completed by the police officer in that the hour of the test was incorrect, and the lot number for the simulator solution was wrong. 982 S.W.2d at 696. The court held that evidence of inconsistencies did not rebut by a preponderance of the evidence that the machine malfunctioned. *Id.* at 697.

For these reasons, I would reverse the trial court's decision.