Cecelia R. ROBISON, Respondent,

v.

**DIRECTOR OF REVENUE STATE OF MISSOURI, Appellant.**

**No. WD 45399.**

Missouri Court of Appeals,
Western District.

Sept. 22, 1992.

William L. Webster, Atty. Gen., Jefferson City, Tracey L. Dano, Asst. Atty. Gen., Independence, for appellant.

Austin B. Speers, Kansas City, for respondent.

Before KENNEDY, P.J., and SPINDEN and SMART, JJ.

SPINDEN, Judge.

On March 4, 1991, police officers arrested Cecelia Robison on her way home from a lounge where she admitted having two drinks. They accused her of driving while intoxicated. A breath testing machine reported her blood alcohol content to be .13 percent by weight. The Director of Revenue suspended Robison's driving privileges.

Robison received a trial de novo in the Circuit Court of Jackson County. The trial court found that probable cause existed for Robison's arrest for DWI and that the breath test result was ".13 percent or only slightly over." Nonetheless, the court reversed the Director's suspension because "the Breathalyzer machine by its very nature—and I believe I can make that finding—has some imprecision," and the Director did not meet his burden of proof. The court ordered that Robison's driving privileges be reinstated. We reverse.

Sergeant DiPalermo of the Lee's Summit Police Department stopped Robison's car as it traveled north on Mo. 291 because of what DiPalermo deemed to be erratic driving. Robison's car changed lanes abruptly without signaling and approached the rear of DiPalermo's patrol car very rapidly.

Robison's car started to pass the patrol car on the right hand side but then abruptly slowed down. DiPalermo got behind the car and noticed that its wheels crossed the dividing line onto the shoulder a couple of times.

After stopping Robison's car, DiPalermo noticed an odor of alcohol about Robison. When he asked her to get out of the car, Robison was belligerent and uncooperative. DiPalermo noticed that she was not very steady when she walked, and he concluded that she was highly intoxicated.

Officer Oothout arrived about two or three minutes later to assist DiPalermo and to administer a field sobriety test. He also smelled a faint odor of alcohol about Robison. In the field sobriety test, Robison correctly recited the alphabet, but she could not count backwards without skipping numbers. While performing a walk-and-turn test, she used her arms and stopped occasionally to keep her balance. She could not move her finger to her nose without tilting her head forward and opening her eyes. When officers asked her to stand on one leg, she started swaying and hopping and put her foot back down on the ground. Robison's attitude during the test was combative and insulting.

Oothout then arrested her for DWI. Oothout took her to the police station and administered a breath test on a Breathalyzer Model 900A machine. Oothout possessed a valid Type III permit to operate the machine. He followed the procedures and completed the checklist supplied by the Department of Health for administering the test. To the best of Oothout's knowledge, the machine was functioning properly at the time of the test. Robison's breath test registered a .13 percent blood alcohol content. Robison admitted to Oothout that she had drunk a couple of "bloody Marys" that evening.

■ The General Assembly has mandated that the Director can make a *prima facie* case based on a breath test only if he shows that the test was "performed according to methods and devices approved by the state division of health [1] by ... a person possessing a valid permit issued by the state division of health for this purpose." Section 577.026.1, RSMo 1986. The Department of Health approved the breath analyzer used by Oothout, Model 900A, in 19 CSR 20–30.050(1). The Director established that Oothout was properly certified to administer the test and that he followed the Department of Health's checklist in conducting the test. These matters were not contested. The Director made a *prima facie* case. *Collins v. Director of Revenue,* 691 S.W.2d 246, 253 (Mo. banc 1985).

Robison presented no evidence that the machine was malfunctioning or that a Breathalyzer Model 900A, by its nature, was imprecise. We find nothing in the record to support the trial court's finding that the machine was imprecise. If the court meant that all machines, by their nature, are imperfect, it was correct, but in this computer age we cannot join the trial court in a broad-based generalization that machines typically are imprecise. We are amazed at the precision of many modern machines—including the one we used to draft this opinion—and they continue to become more precise with each new generation of machines.

■ A trial court's findings not supported by substantial evidence should be set aside. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Finding no evidence whatsoever to support the trial court's finding, we set aside its judgment.

■ Robison asserts that the record supports a notion that the particular machine in her case was malfunctioning. That was not the court's finding; it was that the Breathalyzer in general was imprecise. But granting the trial court every deference, we will review the court's judgment as though that was its intendment.

"A contention that the breathalyzer machine was not in proper operating condition can only be validly made if supported by

1. In 1985, the General Assembly abolished the Division of Health and created the Department of Health. Section 192.005, RSMo 1986. The division's duties were transferred to the new department.

some evidence which at least suggests that a malfunction occurred despite adherence by the testing officer to the correct test methods." *Collins,* 691 S.W.2d at 253.

In making her contention that the machine was malfunctioning and that Oothout improperly administered the test, Robison points to Oothout's inability to remember whether the door to the breath analyzer testing room was closed when he administered the test. We fail to understand the significance of the point. More importantly, as Robison readily admits in her brief, "no evidence was presented either way by [the Director or Robison as to whether the door was open or closed.]" We will not find the test results inaccurate based upon Robison's mere speculation, nor should the trial court have relied on it.

Robison notes that a person with no odor of alcohol on her breath registered .21 on the machine a week earlier, and this demonstrates that the machine was inaccurate. The trial court, however, properly sustained the Director's objection that this evidence was irrelevant and did not rely upon it. Neither will we.

Finally, Robison asserts that, although Oothout stated that he had read the verified report and that it was accurate to the best of his knowledge, he acknowledged that the report erroneously stated the date of arrest. An incorrect date of arrest is not evidence of a machine's malfunction. *See Bradford v. Director of Revenue,* 735 S.W.2d 208, 210 (Mo.App.1987). No dispute exists that Robison was arrested on March 4, 1991, and that she took a breath test shortly after her arrest.

We conclude that the trial court's judgment was not supported by the evidence. Its finding that the Breathalyzer used in this case was imprecise was not supported by substantial evidence. Hence, we reverse and remand to the trial court with instructions for the court to enter a judgment in favor of the Director.

All concur.