**Michael J. HURLEY, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. 73254.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 3, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1998.

Evan Buchheim, Asst. Atty. Gen., Jefferson, for appellant.

William G. Buchholz, III, Growe & Buchholz, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Director of Revenue ("Director"), appeals the judgment of the Circuit Court of St. Louis County setting aside the revocation of respondent Michael Hurley's ("driver") driving privileges. We reverse and remand.

On March 4, 1997, Officer Steven Ceriotti, a Webster Groves police officer, observed driver cut off a tractor trailer traveling in the lane next to him. Officer Ceriotti pulled driver over and asked to see his driver's license. Officer Ceriotti noticed a strong smell of alcohol and asked driver whether he had been drinking. Driver admitted to drinking four or five beers. Officer Ceriotti then gave driver a number of field sobriety tests, all of which driver failed. Driver was then arrested for driving while intoxicated and was transported to the police station by Officer Marc Breckenridge, who had arrived on the scene.

Driver was read his Miranda rights and his rights under the Implied Consent Law, both of which driver said he understood. Driver thereby agreed to take a breath analyzer test. Driver was observed for the requisite amount of time and then given a breath analyzer [1] test, which revealed a blood alcohol concentration level of .161%.

---

1. The actual breath analyzer used on driver was the DataMaster.

On May 14, 1997, Director revoked driver's driving privileges under RSMo section 302.505[2] for driving with a blood alcohol concentration in excess of .10%. The revocation was upheld after an administrative hearing. On May 27, 1997, driver filed a petition for a trial de novo in the St. Louis County Circuit Court.

The trial was held August 18, 1997. At trial, driver stipulated there was probable cause for the arrest. Director put three officers on the stand. Officer Ceriotti testified to the events leading up to driver's arrest. Officer Breckenridge testified to performing the actual breath analyzer test on driver and Officer Robert Sterns testified to performing the requisite maintenance inspection of that particular breath analyzer machine.[3] Specifically, Officer Sterns testified that on March 2, 1997, he had performed a maintenance inspection and had completed a maintenance report on the breath analyzer machine used on driver. Officer Sterns also stated he had corrected the original maintenance report because of sloppy handwriting. Those corrections included: 1) changing the time of maintenance on one line from what appeared to be 1940 hours to 1740 hours, the latter number being the actual time he performed the inspection; and 2) correcting the lot number for the simulator solution used to calibrate the breath analyzer (he had incorrectly added an extra numeral 3, listing the solution as 963310 rather than the correct number 96310).

Driver presented no evidence at trial.

On August 20, 1997, the trial court set aside the revocation of driver's driving privileges finding there was no competent evidence of proper maintenance of the breath analyzer machine. The Director of Revenue appealed.

■ Director's first point on appeal alleges the trial court erred in finding Director failed to prove proper maintenance of the breath analyzer machine in that Director established her prima facie case which driver failed to rebut with any evidence. In this point, Director argues she presented evidence that the breath analyzer machine was maintained by a qualified operator within thirty-five days before driver's breath test, notwithstanding the corrections to the report and that driver presented no evidence proving the breath analyzer machine had not been properly maintained. We agree with Director.

■ The trial court's decision will be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "At trial, Director has the burden of establishing a prima facie case for suspension of a driver's license ..." *Anderson v. Director of Revenue*, 969 S.W.2d 899, 901 (Mo.App. E.D.1998). To meet this burden, Director must present evidence that at the time of the arrest 1) there was probable cause for arresting driver for driving under the influence, and 2) the alcohol concentration level in the driver's blood was .10% or greater. *Id.* at 901–02 citing RSMo sections 302.505 and 302.530 (1994). To establish a foundation for admission of breath analyzer test results, Director must establish three elements: "1) the test was performed by following approved techniques and methods of the Division of Health, 2) the operator held a valid permit, and 3) the equipment and devices were approved by the Division." *Id.*, quoting *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–41 (Mo.1992). Regulations adopted in 1988 also require an inspection of the breath analyzer by a Type II permit holder within 35 days of the blood alcohol test for admittance of the test results. *Anderson*, 969 S.W.2d at 902 citing 19 CSR 25–30.031(3). Once Director has established a prima facie case, the burden shifts to the driver to present evidence to rebut the prima facie case by a preponderance of the evidence. *Id.* "The burden is high to rebut the Director's prima facie case." *Id.* In *Anderson*, the court held Director had established a prima facie case that the breath analyzer machine had been properly main-

---

**2.** All statutory references are to RSMo (Cum. Supp.1996).

**3.** The evidence indicated that both officers possessed the requisite valid permits to operate and maintain the breath analyzer or DataMaster.

tained despite the fact the officer, who had performed the maintenance check, had written his permit number incorrectly on the maintenance report.[4] *Id.* at 903. In *Anderson*, the driver argued the breath analyzer machine could not be found reliable if maintained by operators without valid permits. However, the driver offered no proof the breath analyzer machine was not properly inspected within 35 days of the breath test. *Id.* The court stressed the driver must rebut with evidence and not merely point out an inconsistency. *Id.*

In our case, driver stipulated there was probable cause to arrest him. Director was therefore left with demonstrating the alcohol concentration in driver's blood was .10 percent or greater. Director offered Officer Breckenridge's testimony that when he performed the breath analyzer test on driver, he did so by following the approved techniques and methods of the Division of Health. Further, Breckenridge testified he held a valid permit to perform the breath analyzer test and that he did so on a machine that had been approved by the Division. Director also offered Officer Sterns' testimony that he was a valid permit holder and had performed a maintenance check on the breath analyzer machine on March 2, just two days before the test was performed on the driver. Therefore, the time of the maintenance was done clearly within the 35 day time frame set by regulations. Officer Sterns explained he had written the time down inconsistently on the report, 1740 on one line and 1940 on another. Sterns further explained he had incorrectly copied the lot number of the simulator solution but realized his errors and corrected them on the report retained at the police station.[5]

Driver presented no evidence. On cross-examination of Officer Sterns, driver offered the original maintenance report filed by Sterns with the Department of Health. Driver attempted to illustrate that the incon-

sistencies, both the times and the incorrect solution number, which Sterns had already explained on direct, would render the maintenance report unreliable. However, driver offered no direct evidence or even a theory on how or why the inconsistencies could cast doubt on the reliability of the maintenance report. In that Director met her prima facie case, driver needed to rebut this with evidence and not simply point out inconsistencies. Director met the burden of establishing a prima facie case, driver failed to rebut this with evidence that the maintenance report was not reliable and therefore we conclude the results of the breath analyzer test should have been admitted.

■ Director's second point on appeal alleges the trial court erred in setting aside the revocation of driver's driving privileges under RSMo section 302.505, because the decision was against the weight of the evidence. In this point, Director argues the evidence established the arresting officer had probable cause to arrest driver for driving while intoxicated and driver's blood alcohol content exceeded .10%. As illustrated in the foregoing point, we agree.

Based on the foregoing, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

HOFF, P.J., and RHODES RUSSELL, J., concur.

---

4. In *Anderson*, a case submitted on the record, Director submitted the maintenance report performed by Officer Michael Johnson and a copy of Michael Johnson's valid Type II permit. The permit number written on the maintenance report and the number on the valid Type II permit were inconsistent.

5. The maintenance reports are done in duplicate, with the original kept at the police station and the copy sent to the Department of Health.