Stephen Robert SMITH, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.

No. WD 56962.

Missouri Court of Appeals, Western District.

March 14, 2000.

Jeffrey S. Eastman, Gladstone, for Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Appellant.

Before: SMART, P.J., and ELLIS and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

The Director of Revenue (the Director) appeals from the judgment of the circuit court reinstating the driver's license of the respondent, Stephen Robert Smith, after it had been administratively suspended for driving while intoxicated (DWI), pursuant to § 302.505.[1]

In his sole point on appeal, the Director claims that the trial court erred in reinstating the respondent's driver's license because, on the admissible evidence, he made a *prima facie* case for suspension under § 302.505 in that the evidence established that there was probable cause to: (1) arrest the respondent for DWI; and (2) believe that, at the time, his blood alcohol concentration (BAC) was ten-hundredths of one percent or more by weight of alcohol in his blood.

We reverse and remand.

## Facts

On April 5, 1997, Deputy Michael Stephens, a deputy sheriff for the Platte County Sheriff's Department, followed the respondent's motor vehicle, a Dodge truck, southbound on Interstate 29. As he was following the truck, he observed it weaving on the highway, almost striking another vehicle and a stranded motorist on the right shoulder. As a result, he pulled the truck over and made contact with the respondent.

While conversing with the respondent, Deputy Stephens smelled alcohol on his breath and observed that his eyes were glassy. He also saw a twelve-pack of beer on the seat next to the respondent and several beer cans on the floor of the truck. As a result of these observations, Deputy Stephens administered three field sobriety tests, the walk-and-turn test, the one leg stand test, and the gaze nystagmus test, which, in his opinion, the respondent failed. Following these tests, he advised the respondent that he was under arrest for DWI and transported him to the sheriff's department. While there, the respondent was read his *Miranda* rights and submitted to a breathalyzer test requested and performed by Deputy Stephens, which indicated that he had a BAC at the time of .116 of one percent.

Subsequent to his arrest, the Director notified the respondent that his driver's license had been suspended pursuant to § 302.505. The respondent filed a petition for administrative review of the suspension. After a hearing, the hearing officer sustained the suspension of the respondent's driver's license.

At some point in time, the respondent obtained a copy of his driving record as maintained by the Department of Revenue. Within this file was a "Datamaster Maintenance Report," dated March 22, 1997, which referenced use of "Guth Labs Lot # 96310." According to this report, the breath analyzer machine used to test the respondent's BAC on April 5, 1997, was last inspected on March 22, 1997, by Patrick Clark, a sergeant with the sheriff's department. The file also contained a copy of a "Certificate of Analysis" on stationery bearing the letterhead of Guth Laboratories, Inc., (Guth), for the simulator solution used by the sheriff's de-

---

1. All statutory references are to RSMo Supp. 1996, unless otherwise indicated.

partment to calibrate the breath analyzer machine used to perform the breathalyzer test given to the respondent. The certificate was signed by Guth's president and stated that "[r]andom samples of Lot Number 96310 of Alcohol Reference Solution for Simulator were analyzed by gas chromatography and found to contain 0.1214 percent (w/vol) ethyl alcohol."

On July 31, 1997, the respondent filed a three-count petition in the Circuit Court of Platte County against the Director, the sheriff's department, and Guth. In Count I, he sought, pursuant to § 302.535.1, a trial *de novo* regarding the Director's decision to suspend his driver's license, seeking the reinstatement of his license. In Count II, he brought an action, pursuant to Rule 58.01(d),[2] against the sheriff's department, requesting the production of specified information and documents. In Count III, he brought an action, pursuant to Rule 58.01(d), against Guth requesting:

A. A copy of the run of the gas chromatographs of each random sample of Lot No. 96310 analyzed;

B. A copy of the standardized protocol of the laboratory which analyzed each random sample of Lot No. 96310;

C. A copy of any and all studies used to determine and relied upon in establishing the expiration date for Guth Laboratories, Inc., Lot No. 96310; and

D. A copy of any and all studies used to determine the effects of the presence of any interfering substances in a simulator solution such as Guth Laboratories, Inc., Lot No. 96310.

On August 7, 1997, Guth was served with a summons, issued by the Platte County Circuit Court, to file a responsive pleading to the respondent's petition. Guth failed to respond to the summons. On July 22, 1998, the respondent moved for an "interlocutory judgment on default and order compelling production of docu-ments upon penalty of exclusion." On September 21, 1998, the trial court sustained the respondent's motion and, pursuant to Rule 74.05(b), entered an interlocutory order of default, ordering Guth to produce the documentation and information requested in the respondent's petition by noon on October 21, 1998, and advising it that, if it did not, the court would "preclude and prohibit the admission into evidence the 'Certificate of Analysis' as tendered under the letterhead of Guth Laboratories, Inc."

Guth failed to comply with the trial court's September 21, 1998, order. As a result, on January 20, 1999, prior to the trial *de novo* on the appellant's petition to reinstate his license, the respondent moved, pursuant to Rule 74.05(a), for a default judgment against Guth because of its failure to produce the information and documentation, as ordered by the trial court in its September 21, 1998, order, and requested that the certificate of analysis from Guth be excluded from evidence in the reinstatement of license proceeding. In response to the motion, the Director's counsel advised the trial court that he had no objection and had no plans to introduce the certificate at the hearing. After hearing argument of counsel, the trial court sustained the respondent's motion to exclude the certificate.

The case proceeded to trial before the Honorable Daniel M. Czamanske. At trial, the Director called as a witness Sergeant Patrick Clark, who testified that he was a Type II permit holder for purposes of inspecting and maintaining breath analyzer machines and, on March 22, 1997, performed maintenance on the breath analyzer machine used to test the respondent's BAC on April 5, 1997. He further testified that he found the breath analyzer machine to be operating correctly at that time. When asked by the Director's counsel if he independently verified the concen-

---

**2.** All rule references are to the Missouri Rules of Civil Procedure (1997), unless otherwise indicated.

tration of the simulator solution provided to him by an outside entity or relied exclusively upon the representations of that entity, the respondent objected to the questioning on the basis that Sergeant Clark would be required to rely on representations from Guth and Guth had failed to produce the documentation as previously requested by the respondent and ordered by the court. The trial court, in sustaining the respondent's objection, stated:

> I believe fairness would entitle [the respondent's counsel and the respondent] to have access to Guth's records. And if the only way that Guth—perhaps the Department of Revenue or Department of Health is not going to do business with them anymore, because I'm going to sustain [the respondent's counsel's] objections.
>
> Officer, on your part, you've done everything you're supposed to do. It has nothing to do with your conduct as an officer in this matter whatsoever. You're doing exactly what you're supposed to do.
>
> On the other hand this Court has entered an order previously that this laboratory supply certain information as to the makeup of these ampoules, and somehow that the [respondent] can determine the chemical makeup and the validity of the testing, and the assurances that a manufacturer would give to a—a—a customer such as Platte County Sheriff's Department as a—as a buyer of its products. And if Guth's not willing to do that, then the [respondent's] objections will be sustained. Thank you, Officer, you may step down.

The Director then offered for admission Exhibit D, a copy of the Department of Revenue's certified business records. The exhibit included a copy of the "Alcohol Influence Report" prepared by Deputy Stephens, the arresting officer, and the "BAC DataMaster Evidence Ticket," which showed that the respondent had a BAC of .116 of one percent at the time of his breathalyzer test. Exhibit D also in-

cluded copies of the "Datamaster Maintenance Report" for the breath analyzer machine used to check the respondent's BAC prepared by Sergeant Clark on March 22, 1997, Guth's "Certificate of Analysis" for the simulator solution used to calibrate the breath analyzer machine, and Sergeant Clark's Type II permit. The respondent objected to the admission of this exhibit on the basis that

> the purported test result that's included within this packet is based upon a finding that the machine had properly been maintained, which included a calibration check. The calibration check, according to the information in this exhibit was conducted using Guth Labs, and Guth Labs has not complied with this Court's prior order requiring it—that is produce information. So we would object on that basis.

The trial court sustained the respondent's objection to the admission of Exhibit D. The Director then made an offer of proof as to the exhibit and rested. The respondent offered no evidence. Because the Director's exhibit was excluded, the trial court found that he had failed to establish his *prima facie* case for suspension of the respondent's license and sustained the respondent's petition to reinstate his license. On January 26, 1999, the trial court entered its judgment sustaining the respondent's motion for a default judgment against Guth, and ordering the Director to reinstate the respondent's license and to correct his official driving record to reflect that fact.

This appeal follows.

### Standard of Review

Our review of the trial court's judgment reinstating the respondent's license, after it had been administratively suspended under § 302.505 for DWI, is the same as in any other judge-tried case and is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. *banc* 1976). *Endsley v. Director of Revenue*, 6 S.W.3d 153, 157

(Mo.App.1999). As such, we must affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

## I.

In his sole point on appeal, the Director claims that the trial court erred in reinstating the respondent's driver's license because, on the admissible evidence, he made a *prima facie* case for the administrative suspension of his license under § 302.505 in that the evidence established that there was probable cause to: (1) arrest the respondent for DWI; and (2) believe that, at that time, his BAC was ten-hundredths of one percent or more by weight of alcohol in his blood. Specifically, he contends that the trial court erred in excluding evidence of the respondent's BAC test result that established that he was driving with a BAC of .10% or greater. We agree.

▮ Section 302.505.1 authorizes the administrative suspension or revocation of a driver's license by the Director for DWI and provides, in pertinent part:

> The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was ten-hundredths of one percent or more by weight ...

Under this statute, the Director makes a *prima facie* case for the suspension of a person's license by establishing by a preponderance of the evidence that there was probable cause: (1) to arrest the driver for DWI; and (2) to believe that, at the time of the arrest, the driver's BAC was at least ten-hundredths of one percent or more by weight. *Endsley,* 6 S.W.3d at 158. " 'Once [the] Director has established a prima facie case, the burden shifts to the driver to present evidence to rebut the prima facie case by a preponderance of the

evidence.' " *Id.* (*quoting Hurley v. Director of Revenue,* 982 S.W.2d 694, 696 (Mo.App.1998)).

## A. Probable Cause to Arrest for DWI

▮ We first address whether the Director met his burden of showing that there was probable cause to arrest the respondent for DWI. " 'Probable cause exists when the facts and circumstances would warrant a person of reasonable caution to believe that an offense has been or is being committed.' " *Whitworth v. Director of Revenue,* 990 S.W.2d 115, 118 (Mo.App.1999) (*quoting Kramer v. Director of Revenue,* 924 S.W.2d 308, 310 (Mo.App.1996)). Thus, whether probable cause existed to arrest the respondent is determined " 'in relation to the circumstances as they would have appeared to a prudent, cautious, and trained police officer.' " *Id.* (*quoting Kramer,* 924 S.W.2d at 310).

Deputy Stephens stopped the respondent after he observed his vehicle weaving on the highway, almost striking another vehicle and a stranded motorist on the right shoulder of the highway. While talking with the respondent, Deputy Stephens smelled alcohol on his breath and observed that his eyes were glassy. He also saw a twelve-pack of beer on the seat next to the respondent and several beer cans on the floor of the truck. As a consequence, he administered three field sobriety tests which, in his opinion, the respondent failed. This evidence was sufficient to establish probable cause for Deputy Stephens's arrest of the respondent for DWI, satisfying the first prong of the Director's *prima facie* case for suspension. *Endsley,* 6 S.W.3d at 158.

Having decided that the Director met his burden to establish probable cause to arrest the respondent for DWI, we turn to the issue of whether he met his burden of establishing that there was probable cause to believe that the respondent, at the time, was driving a motor vehicle with a BAC of

at least ten-hundredths of one percent or more by weight of alcohol in his blood.

## B. BAC of .10 of One Percent or More

■ At the hearing on the respondent's petition to reinstate his license, the Director attempted to establish that there was probable cause to believe that the respondent's BAC was equal to or greater than ten-hundredths of one percent by introducing into evidence, as provided by § 302.312.1, Exhibit D. As discussed, *supra*, this exhibit consisted of a copy of the "Alcohol Influence Report," prepared by Deputy Stephens; the "BAC DataMaster Evidence Ticket," which showed that the respondent had a BAC of .116 of one percent; the "Datamaster Maintenance Report"; Guth's "Certificate of Analysis" for the simulator solution used to calibrate the breath analyzer; and the Type II permit of the breath analyzer operator, Sergeant Clark. The respondent objected to the admission of Exhibit D on the basis that:

> the purported test result that's included within this packet is based upon a finding that the machine had properly been maintained, which included a calibration check. The calibration check, according to the information in this exhibit was conducted using Guth Labs, and Guth Labs has not complied with this Court's prior order requiring it—that is produce information. So we would object on that basis.

The trial court sustained the respondent's objection, preventing the Director from establishing that there was probable cause to believe that the respondent's BAC was equal to or greater than ten-hundredths of one percent or more by weight, as required to make a *prima facie* case for suspension of his driver's license. The Director contends that the trial court erred in excluding the exhibit.

■ The admission of evidence is within the sound discretion of the trial court, and its decision to admit or exclude evidence will not be disturbed absent an abuse of that discretion. *Phillips v. American Motorist Ins. Co.*, 996 S.W.2d 584, 587 (Mo.App.1999). Here, there is no dispute that the Director's Exhibit D was admissible under § 302.312.1. Nonetheless, the trial court excluded it as a sanction for Guth's failure to comply with the court's discovery order to provide requested documents and information within its possession, not the Director's. This it could not do. "[T]he Director of Revenue cannot be required, in a proceeding [for the suspension of a driver's license], to provide documents or information other than those in its records," *Keefover v. Director of Revenue*, 996 S.W.2d 75, 76 (Mo.App.1999) (*citing Arth v. Director of Revenue*, 722 S.W.2d 606, 607 (Mo. *banc* 1987)); *Bedell v. Director of Revenue*, 935 S.W.2d 94, 96 (Mo.App.1996), and is not subject to sanctions for the failure to do so. *Keefover*, 996 S.W.2d at 76; *Lazzari v. Director of Revenue*, 851 S.W.2d 68, 70–71 (Mo.App.1993); *Richardson v. Director of Revenue*, 725 S.W.2d 141, 141–142 (Mo.App.1987). As such, the Director could not be sanctioned for the failure of Guth, a third party, to provide the documents and information in its possession when Guth was not under the legal control of the Director.

■ It should be noted that the respondent's action against Guth and its presence in the lawsuit was based solely on Rule 58.01(d), which provides that the rule "does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land." While this rule allowed the respondent to file a separate action against Guth requesting the production of information and documents as part of his pretrial discovery with respect to the reinstatement of his license, it did not give the trial court the authority to sanction the Director for Guth's failure to produce the same. Any sanction by the court for Guth's failure to produce the information and documents requested would have to have been against Guth, not the Director, as provided in Rule 61.01(d).

Even assuming, *arguendo*, that the trial court could have somehow sanctioned the Director for Guth's failure to comply with its discovery order, logically and reasonably, the proper sanction would have been to exclude those documents which Guth was ordered to but did not produce. In this vein, the respondent moved for an "interlocutory judgment on default and order compelling production of documents upon penalty of exclusion," requesting that Guth be ordered to produce the requested information and documents relating to its certificate of analysis or, upon its failure to do so, that it be excluded from evidence. The motion was sustained. Nonetheless, instead of simply excluding the certificate and related documents, based on the trial court's perception of "fundamental fairness," it excluded the entire exhibit, Exhibit D, which included not only the certificate, but the respondent's BAC test result. It is apparent from the record that this was done based on the respondent's argument and the court's belief that the introduction of the certificate was required for the Director to establish the second prong of his *prima facie* case for suspension, that the respondent had a BAC of .10% or greater at the time of his arrest. As discussed, *infra*, such is not the case.

The current version of 19 C.S.R. 25–30.051, which governs standard simulator solutions, became effective on October 30, 1998, after the respondent's arrest but before the date of his trial *de novo*. As such, we apply the revised regulation in this case. *Soval v. Director of Revenue*, 2 S.W.3d 854, 857 (Mo.App.1999); *Vilcek v. Director of Revenue*, 974 S.W.2d 602, 604 (Mo.App.1998). 19 C.S.R. 25–30.051 provides, in pertinent part:

(1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be solutions from approved suppliers.

. . .

(3) Approved suppliers of standard simulator solutions are:

. . .

(B) Guth Laboratories, Inc.
Harrisburg, PA 17111–4511

. . .

(4) Maintenance reports using Intoximeter standard simulator solution completed prior to the effective date of this rule shall be considered valid under this rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted.

Under prior versions of 19 C.S.R. 25–30.051, a certificate of analysis by the supplier of the simulator solution used to calibrate a breath analyzer machine that checked the driver's BAC was required to be attached to the maintenance report completed for that machine and admitted into evidence. *Selix v. Director of Revenue*, 985 S.W.2d 380, 382–83 (Mo.App. 1999); *Meurer v. Director of Revenue*, 984 S.W.2d 873, 876 (Mo.App.1999). However, under the current version of 19 C.S.R. 25–30.051, there is no requirement that a certificate of analysis from the supplier of the simulator solution be introduced in order to establish a proper foundation for the admission of the BAC test result. The current version of the regulation only requires that the maintenance report for the breath analyzer machine show that the simulator solution used to calibrate the machine was from an approved supplier. 19 C.S.R. 25–30.051. In this respect, there is no dispute among the parties that the simulator solution used to calibrate the machine, which was used to check the respondent's BAC, was supplied by Guth, an approved supplier under 19 C.S.R. 25–30.051(3)(B). As such, even assuming, *arguendo*, that the trial court could have somehow excluded the certificate because of Guth's failure to produce the information and documents requested by the respondent, such would not have prevented the Director from admitting the respondent's BAC test result and satisfying the

second prong of his *prima facie* case for suspension.

 Having determined that the trial court erred in excluding the respondent's BAC test result in excluding Exhibit D on the basis that Guth had failed to comply with the court's discovery order, we must next determine whether it was otherwise admissible for purposes of satisfying the BAC requirement of § 302.505 to make a *prima facie* case for suspension of the respondent's license.

To establish a proper foundation for the admission of the result of an alcohol breath test to satisfy the BAC requirement of § 302.505, the Director was required to show that: (1) the test was performed by following the techniques and methods approved by the Department of Health; (2) by a person possessing a valid permit; and (3) using equipment and devices approved by the Department of Health. § 577.020, RSMo Supp.1998; *Endsley,* 6 S.W.3d at 159. "These foundational requirements are found in the Code of State Regulations in 19 CSR 25–30." *Meurer,* 984 S.W.2d at 876. There is no dispute and the record reveals that the Director satisfied these foundational requirements for admission of Exhibit D, which included the result of the respondent's breathalyzer test. Exhibit D reflected that the respondent had a BAC of .116 of one percent at the time of his arrest, which satisfied the second prong of the Director's *prima facie* case for suspension, probable cause to believe that at the time of the respondent's arrest, his BAC was ten-hundredths of one percent or more by weight of alcohol in his blood.

For the reasons stated, we find that the Director established a *prima facie* case for suspension of the respondent's license, shifting the burden to the respondent to rebut the same by a preponderance of the evidence, which he did not do. *Endsley,* 6 S.W.3d at 158. As such, the trial court erred in ordering the respondent's license reinstated without any showing by him rebutting the Director's *prima facie* case

for suspension. *Hurley,* 982 S.W.2d at 696.

### Conclusion

The judgment of the circuit court reinstating the driver's license of the respondent after it had been administratively suspended for DWI, pursuant to § 302.505, is reversed and the case is remanded for further hearing, in accordance with this opinion, to determine whether the respondent can rebut the Director's *prima facie* case for suspension of his driver's license.

SMART, P.J., and ELLIS, J., concur.