Steven ORTON, Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. WD 62365.

Missouri Court of Appeals,
Western District.

March 9, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2004.

Jeffrey Scott Eastman, Gladstone, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Nield, Office of Attorney General, Jefferson City, for respondent.

RONALD R. HOLLIGER, Judge.

Steven Orton appeals the trial court's approval of the administrative suspension of his driving privileges under Section 302.505, RSMo 2000.[1] He raises two issues on appeal. He first contends that the trial court failed to make certain findings of fact as required under Supreme Court Rule 73.01(c). He also argues that the trial court erred because the Director's burden was not met with regard to whether the arresting officer had probable cause to arrest him for the offense of driving while intoxicated. We hold that the trial court committed error by failing to make the findings Orton requested, reverse the judgment below and remand the matter for further proceedings.

## Factual and Procedural Background

Around midnight on May 18, 2001, appellant Steven Orton was stopped by Detective Charles Wood near 70th Street on Prairie View Road, a two-lane thoroughfare in Platte County, Missouri. Wood, the arresting officer, had observed Orton's vehicle drifting across both the centerline and the fog line on the right side of the road.

When he approached the vehicle to talk to Orton, the officer noted a strong scent of alcohol. Orton admitted to drinking four beers earlier that evening. He was polite, however, and had no difficulty retrieving his license and registration upon the officer's request. At that point, Wood did not believe that he had probable cause to suspect that Orton was driving under the influence, so the officer asked Orton to undergo field sobriety testing.

The first sobriety test administered by the arresting officer was the horizontal gaze nystagmus test. Orton showed all six signs of intoxication under that test.

However, there is some dispute as to whether the arresting officer complied with the standard testing procedure by first identifying whether his eyes tracked equally and had the same pupil size. At trial, the officer testified that he confirmed those things, but he omitted any mention of that step during his deposition.

The second test administered was the "walk and turn" test. According to the officer's testimony, Orton was unable to keep his balance while listening to instructions and started the test before the instructions were completed. While performing the test, Orton also stepped off of the line, failed to touch heel to toe as instructed, used his arms for balance, and made an improper turn. Orton challenged the officer's testimony, as he had no independent recollection of Orton's performance aside from the notes made on the arrest record.

The third test was the "one leg stand" test. The arresting officer noted that Orton swayed while balancing and put his foot down at one point before the testing period was over. Again, Orton attacked that testimony upon the basis of the officer's inadequate recall of the incident independent of his prior written notations. Subsequent breath alcohol testing produced results indicating a blood alcohol level of .110.

Orton was arrested for the offense of driving while intoxicated. Pursuant to Section 302.505, RSMo, his driver's license was administratively suspended by the Director of Revenue. He sought a trial de novo in the circuit court, as provided by Section 302.535, RSMo, and the matter proceeded to trial on October 2, 2002.

At the beginning of trial, Orton filed a request for findings of fact pursuant to

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Supreme Court Rule 73.01(c). The specific findings requested by him were:

1. Is the breath test result obtained herein accurate to a reasonable degree of scientific certainty?

2. Is the breath test result obtained herein reliable to a reasonable degree of scientific certainty?

3. Does the evidentiary breath testing equipment and protocol utilized assume a breath temperature of 34° Celsius plus or minus .2° Celsius? [2]

4. Is a breath temperature of 34° Celsius plus or minus .2° Celsius certain to a reasonable degree of scientific certainty?

As the trial progressed, Orton objected to the admission of portions of the administrative record. Specifically, he objected to and sought the exclusion of the portion of that record relating to the result of the breath test on the grounds that no foundation had yet been laid for the admission of that result. He also objected to and asked the trial court to exclude evidence regarding statements Orton made in response to interview questions posed subsequent to his arrest.[3] The trial court sustained both objections and admitted the remaining portions of the administrative record. Thereafter, the arresting officer was questioned with regard to the breath test results from the Breathalyzer test done at the station. A foundation was laid for admission of those results, and Orton did not renew his objection to their admission. The arresting officer testified that the test conducted at the station revealed Orton to have a blood alcohol content of .110.

Orton presented testimony from three witnesses. A Platte County officer testified about police training for field sobriety tests. A former National Highway Traffic Safety Administration (NHTSA) employee testified about NHTSA protocols for alcohol testing and evaluation. Finally, a forensic toxicologist testified about the standards employed in administering field sobriety tests and the assumptions regarding breath temperature underlying the testing methodology employed by the breath testing unit used on Orton and how those assumptions affected the unit's accuracy and precision. The toxicologist also offered testimony stating that the unit's assumption of a subject's average breath temperature of 34° Celsius ($\pm$ .2° Celsius) was not supported by empirical scientific evidence.

Following trial, the trial court entered its judgment upholding the administrative revocation of Orton's driving privileges. The judgment failed to contain any of the findings requested by Orton, as described above. Orton appeals.

## Discussion

■ We proceed under the *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), standard of review with regard to appeals from a trial court's judgment in proceedings pursuant to Section 302.535, RSMo. *See Rogers v. Dir. of Revenue*, 947 S.W.2d 475, 476–77 (Mo.App.1997); *Matthews v. Dir. of Revenue*, 938 S.W.2d 279, 282 (Mo.App.1997); *House v. Dir. of Revenue*, 997 S.W.2d 135, 138 (Mo.App.1999). We will reverse only upon a showing that the judgment was not supported by substantial

---

**2.** The language of this request, together with the fourth posed by Orton, originally referred to "a *body* temperature of 34° Celsius plus or minus .2° Celsius." Later, during trial, Orton was permitted to amend his original requests for findings by interlineation to the language stated above.

**3.** These statements were admitted into evidence later in the case, after Orton conceded that he had "opened the door" to admission of that evidence through his cross-examination of the arresting officer.

evidence, was against the weight of the evidence, or erroneously applied or stated the law. *See Murphy*, 536 S.W.2d at 32.

 In order to suspend or revoke an individual's driving privileges as a result of an alcohol-related offense, the Director must establish two things by a preponderance of the evidence: (1) that there was probable cause to arrest the individual for driving in violation of Sections 577.010 or 577.012, RSMo 2000; and (2) that the individual had an blood alcohol level in excess of the limit set by statute. *See Helton v. Dir. of Revenue*, 944 S.W.2d 306, 308 (Mo. App.1997) (citing *Collins v. Dir. of Revenue*, 691 S.W.2d 246, 252 (Mo. banc 1985)). The Director bears the burden of persuasion at all times. *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 546 (Mo. banc 2003). However, once the Director has presented a *prima facie* case, the burden of production shifts to the driver "to adduce evidence that his blood alcohol level did not exceed the legal limit." *Id.*

 In his first point, Orton contends that the trial court erred by failing to render findings of fact properly requested by him pursuant to Supreme Court Rule 73.01. The Director concedes that the trial court failed to make findings on those issues and that the trial court was required to make such findings. However, the Director argues that reversal is not required unless "such failure materially affects the merit of the action or interferes with appellate review." *Legacy Homes P'ship v. Gen. Elec. Capital Corp.*, 10 S.W.3d 161, 162 (Mo.App.1999) (quoting *Lattier v. Lattier*, 857 S.W.2d 548, 549 (Mo.App.1993)).

Here, the Director takes the position that the requested findings were immaterial for two reasons. Director first claims that Orton failed to object to admission of the breath test results. Relying upon *Sullivan v. Director of Revenue*, 980 S.W.2d 339, 341 (Mo.App.1998), the Director argues that it was unnecessary to lay a foundation for breath test results when those results come into evidence without objection. Second, the Director contends that, in any event, the proper statutory foundation was laid at trial for admission of those results.

The Director's contentions, however, are not responsive to the actual argument Orton raises. On appeal, Orton argues that the requested findings were essential because they are central to his claims that the judgment was against the weight of the evidence and unsupported by substantial evidence. As we interpret Orton's arguments, he is not challenging the admissibility of the breath test results. Rather, he is raising questions regarding the reliability of those results. Put another way, his argument concerns the weight and credibility to be given to that evidence. The failure to object to the admission of the evidence does not prohibit Orton from challenging the weight, credibility, or reliability of that evidence. *See, e.g., State v. Butler*, 24 S.W.3d 21, 53 (Mo.App.2000) (discussing *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852 (Mo. banc 1993)).

Here, Orton clearly sought to raise an issue touching upon the reliability of the breath testing equipment used by the arresting officer to test Orton's blood alcohol level. He presented evidence in the form of expert testimony, seeking to undermine the credibility and weight given to the test results. The findings Orton requested were intended to reveal the factual underpinnings of the trial court's determination regarding that issue, to allow for more thorough appellate review of the issue. That issue was clearly in dispute between the parties and was material to the case at bar.

We disagree with the Director's contention that the requested findings were im-

material. Nor do we find that the record is sufficient to support the judgment and afford a meaningful review of the issues raised. *Berlin v. Pickett,* 100 S.W.3d 163, 166–67 (Mo.App.2003); *Legacy Homes P'ship,* 10 S.W.3d at 163. Therefore, the trial court's failure to make findings in response to the four areas Orton identified in his request for findings of fact constitutes reversible error. A remand is required so that the trial court may make appropriate findings pursuant to Orton's Rule 73.01(c) request for findings of fact.

Having concluded that the trial court failed to make required findings of fact, we need not address Orton's second point on appeal, which contends that the trial court erred in affirming the administrative suspension on the grounds that the Director failed to establish that the arresting officer had probable cause to arrest Orton on the charge of driving while intoxicated.

We, therefore, reverse the judgment below and remand the matter for further proceedings consistent with this opinion.

EDWIN H. SMITH, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.