### Steven K. ORTON, Respondent,

v.

### DIRECTOR OF REVENUE, Appellant.

### No. WD 64443.

Missouri Court of Appeals, Western District.

June 30, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 2005.

James A. Chenault, III, Jefferson City, MO, for appellant.

Jeffrey S. Eastman, Gladstone, MO, for respondent.

Before EDWIN H. SMITH, C.J., ROBERT G. ULRICH and PATRICIA BRECKENRIDGE, JJ.

ROBERT G. ULRICH, Judge.

The Director of Revenue appeals the trial court's judgment setting aside the Director's administrative suspension of Steven Orton's driving privileges under section 302.505.1.[1] The Director claims

1. All statutory references are to RSMo 2000 unless otherwise indicated.

that the trial court erred in setting aside the suspension and reinstating Mr. Orton's driving privileges because she established a *prima facie* case for suspension, which Mr. Orton failed to rebut. The judgment is reversed, and the case is remanded with directions.

### Factual and Procedural Background

Steven Orton was stopped by Detective Charles Wood of the Platte County Sheriff's Department around midnight on May 18, 2001, after Detective Wood observed Mr. Orton's vehicle drifting across the centerline and the fog line on the right side of the road. Upon approaching the vehicle, the officer detected a strong scent of alcohol. Mr. Orton admitted to drinking four beers earlier that evening.

The officer administered three field sobriety tests. Mr. Orton showed all six signs of intoxication when administered the horizontal gaze nystagmus test. During the walk and turn test, Mr. Orton was unable to keep his balance during the officer's instructions; started the test before the instructions were completed; and during the test, stepped off the line, failed to touch heel to toe, used his arms for balance, and made an improper turn. During the last test, the one leg stand, Mr. Orton swayed while balancing and put his foot down once.

Mr. Orton was arrested for driving while intoxicated. A breath test showed Mr. Orton's blood alcohol content was .110. The Director subsequently suspended Mr. Orton's driver's license under section 302.505. Following an administrative hearing in which the suspension was upheld, Mr. Orton sought a trial de novo in the circuit court under section 302.535. At the beginning of trial, Mr. Orton filed a request for findings of fact under Rule 73.01(c) identifying four specific questions.

At trial, the Director presented the testimony of the arresting officer, Detective Wood, and Mr. Orton's breath test results. Mr. Orton presented the testimony of three witnesses. Patrick Clark, a sergeant with the Platte County Sheriff's Department, testified about maintenance of the breathalyzer and administration of field sobriety tests. William Taylor, a field sobriety test instructor, also testified about the protocol for administering field sobriety tests. Finally, John Zettl, a forensic toxicologist, testified about the breath testing procedure employed in Missouri and the accuracy and precision of the breath test results. Mr. Zettl opined that a breath test result obtained using the Missouri procedure would not be accurate or reliable to a reasonable degree of scientific certainty.

Following trial, the trial court entered judgment upholding the administrative suspension of Mr. Orton's driving privileges. This court reversed the judgment holding that the trial court failed to make required findings of fact and remanded the case to the trial court. *Orton v. Dir. of Revenue*, 131 S.W.3d 827, 830–31 (Mo.App. W.D.2004). No additional evidence was presented on remand. The trial court entered judgment, which included the following findings of fact:

1. Is the breath test result obtained herein accurate to a reasonable degree of scientific certainty?

 A. No

2. Is the breath test result obtained herein reliable to a reasonable degree of scientific certainty?

 A. No

3. Does the evidentiary breath testing equipment and protocol utilized assume a breath temperature of 34 Celsius plus or minus .2 Celsius?

 A. Yes

4. Is a breath temperature of 34 Celsius plus or minus .2 Celsius certain to a reasonable degree of scientific certainty?

A. Vague question

The trial court further found that Mr. Orton "was arrested upon probable cause that he was driving in violation of an alcohol related offense, however [Mr. Orton] is found NOT to have been driving with a BAC of at least .10 percent by weight." The trial court thus ordered that the Director' administrative suspension of Mr. Orton's driver's license be set aside and held for naught. This appeal by the Director followed.

In her sole point on appeal, the Director claims that she established a *prima facie* case for suspension of Mr. Orton's driver's license, which Mr. Orton failed to rebut.

### Standard of Review

■ *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), governs review of a driver's license suspension or revocation case. *Walker v. Dir. of Revenue,* 137 S.W.3d 444, 446 (Mo. banc 2004). As such, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.; Murphy,* 536 S.W.2d at 32. Appellate authority defers to the trial court's determination of credibility. *Walker,* 137 S.W.3d at 446.

■ Section 302.505 authorizes the suspension or revocation of a person's driver's license for driving while intoxicated. It provides in pertinent part:

The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was ten-hundredths of one percent or more by weight. . . .

§ 302.505.1. A driver aggrieved by a decision of the department may seek a trial de novo. § 302.535.1; *Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 545 (Mo. banc 2003). At trial, the burden of proof is on the Director to establish grounds for the suspension or revocation by a preponderance of the evidence. *Id.* Applying the statutory scheme, the Director must initially present evidence to establish (1) probable cause to arrest the driver for violating an alcohol related offense and (2) the driver's blood alcohol concentration of .10 percent or greater. *Verdoorn,* 119 S.W.3d at 545. "This evidence creates a presumption that the driver was intoxicated." *Id.*

### Blood Alcohol Content

■ In her sole point on appeal, the Director challenges the trial court's finding that Mr. Orton's BAC was not .10 or more. She contends that Mr. Orton failed to adduce sufficient evidence to rebut her *prima facie* case that Mr. Orton was legally intoxicated.[2]

■ Breathalyzer test results are essential to establish a *prima facie* case under section 302.505. *Lewis v. Lohman,* 936 S.W.2d 582, 585 (Mo.App. W.D.1996). A Breathalyzer is generally accepted as a

---

**2.** The Director also briefly argues that Mr. Orton failed to object to the admission of the breath test results. Mr. Orton, however, did not challenge the admissibility of the results; rather, he attempted to rebut the Director's *prima facie* case at trial by arguing that the results did not provide sufficient evidence that his BAC was .10 percent or greater at the time of his arrest. Objection to the test results was, therefore, unnecessary. *Orton,* 131 S.W.3d at 830; *Lewis v. Lohman,* 936 S.W.2d 582, 585 (Mo.App. W.D.1996).

reliable device for the measurement of blood alcohol content. *Id.* The Director can make a *prima facie* case based on a breath test only if she shows that the test was "performed according to the methods and devices approved by state department of health by a licensed medical personnel or by a person possessing a valid permit issued by the state department of health for this purpose." § 577.026.1, RSMo 2000. *See also Robison v. Dir. of Revenue,* 837 S.W.2d 42, 43 (Mo.App. W.D.1992).

 After the Director presents a *prima facie* case, the driver is entitled to rebut it with evidence that his blood alcohol content did not exceed the legal limit. *Verdoorn,* 119 S.W.3d at 545. The driver may present rebuttal evidence that raises a genuine issue of fact regarding the validity of the blood alcohol test results. *Id.* at 546. The driver's burden is one of production—not persuasion since the Director retains the burden of proof throughout the proceeding. *Id.*

The parties do not dispute that the Director established a *prima facie* case that Mr. Orton's BAC was .10 percent or greater.[3] The Breathalyzer used to test Mr. Orton's BAC, the Data Master, was approved by the Department of Health. 19 CSR 25–30.050(1). Additionally, the arresting officer testified that he possessed a Type III operator's permit, observed Mr. Orton for fifteen minutes prior to administering the breath test, and followed the Department of Health's checklist in conducting the test. The Director made a *prima facie* case. *Robison,* 837 S.W.2d at 43.

Mr. Orton attempted to rebut the presumption that he was legally intoxicated with the testimony of John Zettl, a forensic toxicologist. Mr. Zettl testified that the breath testing procedure employed in Missouri does not require duplicate tests or testing against a known standard at the time of the test, both of which would determine the accuracy of the test at the time of the test. He also testified that the testing procedure in Missouri does not require that the driver's breath temperature be taken at the time of the test. He testified that the Breathalyzer employed in this case assumes a breath temperature of 34 Celsius but that a study in Alabama concluded that the average breath temperature is closer to 35 Celsius. Mr. Zettl explained that if one's breath temperature is raised one degree Celsius, which is about four or four and a half degrees Fahrenheit, his breath alcohol test result would be about six to six and a half percent higher. Mr. Zettl testified that Missouri's failure to require duplicate testing, testing against a known standard at the time a test is administered, and taking the driver's breath temperature affects the accuracy and precision of the breath test result. Thus, Mr. Zettl opined that a breath test result obtained using the Missouri procedure would not be accurate or reliable to a reasonable degree of scientific certainty.

 Mr. Zettl, however, did not testify to a reasonable degree of scientific certainty that Mr. Orton's BAC was below the test result of .110 percent at the time of the stop and, more importantly, that Mr. Orton's BAC was below the legal limit of .10 percent. Although only one breath test was performed, nothing in the record demonstrates that the Breathalyzer was malfunctioning, that the test was improperly administered, or that something about

---

**3.** This case is unlike *Endsley v. Dir. of Revenue,* 6 S.W.3d 153, 165 (Mo.App. W.D.1999), *overruled on other grounds by Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543 (Mo. banc 2003), where conflicting or contradictory evidence was presented and resolved by the trial court regarding an underlying fact on which the admission of the breath test result was based.

Mr. Orton himself caused the result to be inaccurate. Similarly, Mr. Zettl did not testify that Mr. Orton's breath temperature was not 34 Celsius. To infer from the evidence that Mr. Orton's BAC was anything other than .110 percent, which the breath test concluded, or that Mr. Orton's breath temperature was anything other than 34 Celsius is speculative. While a trial court in a civil case is free to rely on inferences from the evidence in determining whether a party has met his burden of proof, the inferences must be reasonable, and the trial court may not rely on guesswork, conjecture, or speculation. *Testerman v. Dir. of Revenue*, 31 S.W.3d 473, 483 (Mo.App. W.D.2000), *overruled on other grounds by Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543 (Mo. banc 2003). And even if Mr. Orton's actual breath temperature is assumed to have been 35 Celsius, causing his breath test result to have been overstated by six to six and a half percent, his BAC would still have been above the legal limit. *See Walker*, 137 S.W.3d at 448. Mr. Zettl's testimony was, therefore, insufficient to rebut the Director's *prima facie* case that Mr. Orton was legally intoxicated. Mr. Orton failed to present any other evidence that his BAC was below the legal limit. Thus, insufficient evidence was presented to rebut the presumption of intoxication established by the Director's *prima facie* case.

### Probable Cause to Arrest

 Next, Mr. Orton argues that even if he failed to rebut the presumption established by the Director's *prima facie* case that his BAC was .10 percent or greater, the trial court erred in finding that probable cause existed to arrest him for driving while intoxicated. He claims that the evidence revealed that the field sobriety tests were administered improperly thus compromising the validity of the officer's conclusions as to the significance of the results.[4]

 Probable cause exists when the facts and circumstances would warrant a person of reasonable caution to believe that an offense has been or is being committed. *Testerman*, 31 S.W.3d at 476 (quoting *Smith v. Dir. of Revenue*, 13 S.W.3d 700, 705 (Mo.App. W.D.2000)). Probable cause is determined in relation to the circumstances as they would have appeared to a prudent, cautious, and trained police officer at the time of the arrest. *Id.* (quoting *Smith*, 13 S.W.3d at 705).

In this case, Detective Wood observed Mr. Orton's vehicle crossing the centerline and the fog line on the right side of the road. Upon approaching the vehicle, the officer detected a strong scent of alcohol, and Mr. Orton admitted to drinking four beers earlier that evening. The officer administered three field sobriety tests. Mr. Orton showed all six signs of intoxication during the first test, the horizontal gaze nystagmus test. During the walk and turn test, Mr. Orton was unable to keep his balance during the officer's instructions; started the test before the instructions were completed; and during the test, stepped off the line, failed to touch heel to toe, used his arms for balance, and made an improper turn. Finally, during the last test, the one leg stand, Mr. Orton swayed while balancing and put his foot down once during the test.

---

4. The Director contends that because Mr. Orton did not file a cross appeal pursuant to Rule 81.04(b), he is precluded from seeking relief from the part of the trial court's judgment regarding probable cause. A respondent, however, may attack the erroneous rulings of the trial court in order to sustain a judgment in his favor. *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 50 (Mo.App. W.D. 2004).

Mr. Orton contends that the evidence demonstrates that the field sobriety tests were improperly administered and, thus, they cannot provide a basis for a probable cause determination. At trial, Mr. Orton disputed whether the arresting officer complied with the standard testing procedure for the horizontal gaze nystagmus test by introducing evidence that the officer omitted any mention in his deposition of one step of the test although he confirmed the step at trial. Mr. Orton also challenged the officer's testimony regarding the walk and turn test and the one leg stand because the officer had no independent recollection of Mr. Orton's performance on the two tests aside from his notes made on the arrest report. Mr. Orton's challenges to the field sobriety test, however, were all matters of credibility for the trial court to determine, and this court will defer to those determinations. *Walker,* 137 S.W.3d at 446. The evidence was, therefore, sufficient to support the trial court's finding that probable cause existed to arrest Mr. Orton for DWI. *Poage v. Dir. of Revenue,* 948 S.W.2d 194, 196 (Mo.App. E.D.1997).

Because the Director established a *prima facie* case under section 302.505.1, which Mr. Orton failed to rebut, the judgment of the trial court reinstating Mr. Orton's driving privileges was erroneous. The judgment of the trial court is reversed, and the case is remanded with directions to the trial court to enter its judgment affirming the Director's suspension of Mr. Orton's driver's license.

EDWIN H. SMITH, C.J. and BRECKENRIDGE, J. concur.